(117 So. 289)

### WESTERN UNION TELEGRAPH CO. v. BASHINSKY, CASE & CO.
### (6 Div. 901.)

Supreme Court of Alabama. May 10, 1928.

Rehearing Denied June 7, 1928.

1. **Telegraphs and telephones ⚷➛66(1)—Under count declaring upon telegraph company's negligent failure to promptly deliver cablegram, plaintiffs assumed burden of showing such negligence.**

In action for damages for failure to promptly deliver cablegram, under count declaring upon defendant telegraph company's failure to promptly transmit and deliver, plaintiffs assumed burden of showing that defendant negligently failed to promptly transmit and deliver plaintiffs' telegram as it undertook to do.

2. **Telegraphs and telephones ⚷➛66(4)—Evidence held not to establish telegraph company's negligence in failing to promptly deliver cablegram.**

In action to recover damages resulting from defendant telegraph company's failure to promptly deliver cipher cablegram, evidence *held* not to establish negligence in failing to promptly transmit and deliver telegram as defendant undertook to do.

3. **Telegraphs and telephones ⚷➛66(1)—Under count declaring upon telegraph company's failure to deliver cablegram before close of market as agreed, burden was on defendant to show failure was not result of negligence or wrongful omission.**

In action for damages for failure to promptly deliver cablegram, under count declaring simply upon defendant's failure to deliver before close of Liverpool market as agreed, breach of contractual duty, burden was on defendant to show that its failure to deliver seasonably was not result of any negligence or wrongful omission on its part.

4. **Telegraphs and telephones ⚷➛36—Sender having paid extra charge for preference, telegraph company had duty to arrange for preferential handling of cablegram over foreign line handling cablegram, where defendant's line was out of order.**

Where sender paid extra charge for preferential handling of cablegram, telegraph company was under duty to notify British line over which it was sent, where defendant's line was out of order, of nature of message and urgency of its delivery, and to arrange with that line, if possible, for preferential handling of message, and, to acquit itself of negligence, defendant was bound to show that those things were done, or, if they could not be done, that no other and speedier mode of transmission was then available.

5. **Telegraphs and telephones ⚷➛38(1)—Telegraph company, transmitting message in its turn in order of reception, exercises due diligence, notwithstanding delay from prior messages.**

When a telegraph message is transmitted in its turn in order of its reception, due diligence has been shown, and an injurious delay resulting from prior handling of messages previously filed imposes no liability.

6. **Telegraphs and telephones ⚷➛38(2)—Telegraph company held liable for delay of foreign line, handling message in emergency, in transmitting cablegram, where not notifying foreign line of urgency and sender paid extra charge for preferential handling.**

Where sender of cablegram regarding sale of cotton paid extra charge for preferential handling, and defendant telegraph company's line from Liverpool to Manchester was out of order as result of explosion, and defendant sent cablegram over British line from London to Manchester, defendant *held* liable under evidence for delay on British line, where defendant did not notify British line of nature and urgency of message nor arrange for preferential handling of same, since its duty was not fully and properly discharged by merely handing over message to British line for transmission with only 40 minutes remaining before close of market for timely and effective delivery to defendant's office at Manchester.

7. **Telegraphs and telephones ⚷➛66(4)—Evidence did not sustain allegation that defendant knew when it accepted cablegram that it would be unable to deliver as agreed.**

In action for damages for failure to promptly deliver cablegram, evidence *held* not to sus-

tain allegation that defendant knew at time it accepted message that it would be unable to deliver it as it contracted to do because of explosion putting part of its line out of order.

**8. Telegraphs and telephones ⬅65(2)—Sender of telegram could not recover damages not claimed for failure to promptly deliver cablegram.**

In action to recover damages for defendant's failure to promptly deliver cablegram regarding sale of cotton sent to Manchester, England, under counts alleging that telegraph company knew when it accepted cablegram that it would be unable to deliver it as contracted, plaintiffs could not recover damages on account of New York hedge transaction, where no damages in that behalf were claimed.

**9. Telegraphs and telephones ⬅54(5)—Limitation on cablegram form of $500 damages for delay in delivering unrepeated cablegram was binding.**

In action for failure to promptly deliver cablegram, limitation of $500 damages for delay in delivering unrepeated cablegram on cablegram form was binding, and such limitation prescribed the whole duty and liability of telegraph company.

**10. Telegraphs and telephones ⬅54(5)—Limitation of liability of telegraph company as respects unrepeated messages held to extend to implied obligation to inform sender of inability to deliver, as well as express terms.**

Limitation of $500 liability on part of telegraph company with reference to unrepeated cablegram applied to implied obligation to inform sender of inability to deliver as well as express terms of contract.

On Rehearing.

**11. Costs ⬅234—Where judgment is corrected and affirmed, with substantial change favorable to appellant, costs of appeal are automatically cast on appellee.**

Where judgment is corrected and affirmed on appeal, with any substantial change in amount or terms of judgment favorable to appellant, costs of appeal are automatically cast on appellee, just as in cases of nominal reversal.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action by L. E. Bashinsky and others, doing business as Bashinsky, Case & Co., against the Western Union Telegraph Company. From a judgment for plaintiffs, defendant appeals. Corrected and affirmed.

Statement by SOMERVILLE, J.:

This action is brought by the plaintiffs to recover damages resulting from the defendant's failure to promptly deliver a cipher cablegram sent by them to Manchester, England.

Plaintiffs are wholesale cotton merchants, engaged in the buying and selling of cotton. Defendant is and was engaged in domestic and foreign telegraph and cable service, with a line to Liverpool, England, its British relay station, whence it relayed messages over its own wires to other cities, including Manchester. It had no wire from London to Manchester.

On August 15, 1924, at 8:18 o'clock a. m., United States central time, plaintiffs delivered to defendant's Birmingham, Ala., office a cablegram directed to Bashley, their sales agent at Manchester reading as follows:

"We confirm sale 600 bales. Fix price on basis of Liverpool closing."

This meant that plaintiffs sold the 600 bales at whatever price prevailed at the close of the Liverpool Cotton Exchange, and it was necessary that this confirmation of sale should be received by Bashley before the close of the Liverpool market.

At that time the Liverpool market closed at 4:30 p. m. British time, and there was a difference of exactly seven hours between United States central time, at Birmingham, and British time at Manchester and Liverpool.

When plaintiffs delivered the message for transmission, they informed defendant's office manager, Pinckard, that it related to an important market transaction, and that it was necessary for it to be delivered in Manchester before the close of the Liverpool Cotton Exchange at 9:30 a. m., Birmingham time; that is, within one hour and twelve minutes after the time of filing. Pinckard stated that he would give the message his special attention, and that he saw no reason why it should not reach Manchester in ample time.

Using Birmingham time to avoid confusion, the chronology of the transaction was: Cablegram filed at Birmingham, 8:18 a. m. Cablegram reached New York, 8:26 a. m. Cablegram reached London, 8:33 a. m. Cable delivered to British Post Office Lines at London, 8:34 a. m. Cable delivered by British Post Office Lines to Western Union at Manchester, 9:30 a. m. Cable delivered to addressee at Manchester, 9:45 a. m. Liverpool Exchange closed, 9:30 a. m.

Between these points of time, viz. at 9:04 a. m., defendant's Birmingham office received from its Atlanta office this message:

"An explosion in Liverpool streets this morning has cut off our direct Liverpool circuit, messages for Liverpool and points north being transferred to British P. O. telegraphs for handling subject to some delay."

On the face of a copy of this message, Wilkes, defendant's Birmingham manager, wrote, "Better tell Bashinsky and Major Cleaver"—meaning by "Bashinsky," plaintiffs' cotton firm. It does not appear at what hour this message and suggestion were handed by Wilkes to Pinckard, and plaintiffs were not notified of the explosion, or of any prob-

able delay in the delivery of their message to Bashley. They were advised by the latter's cable, received about noon, August 15, that their cable arrived too late for action that day, but, would be acted on the next day, meaning the next market day, which was Monday, the 18th, unless he were instructed otherwise.

No further instructions were given, and the 600 bales were sold by Bashley on Monday at that day's closing price, 68/100 of a penny per pound lower than the previous close, and amounting to $4,080 less on 600 bales than the Friday's price would have yielded.

In accordance with a common practice among cotton traders on the Liverpool Exchange, plaintiffs, after dispatching said cable to Bashley, hedged on their Liverpool sale by buying 600 bales in the New York market at 27.44 cents per pound—this before they were advised of any delay in the delivery of their Manchester cable. On receipt of Bashley's cable so advising, plaintiff notified Wilkes of the situation, and asked him to advise them what to do. Disclaiming any authority in the premises to speak for his company, Wilkes suggested that they sell the New York cotton, take the loss, and file their claim against the company. This they did on the same day; the loss on the New York transaction, including commissions and tax, amounting to $1,958.15.

The suit cablegram was written on defendant's regular blank form, and the undertaking to transmit and deliver it was subject to the following limitations printed on the back of the form, and also effectively on file in the office of the Interstate Commerce Commission at Washington:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated domestic message rate or one-quarter the unrepeated cable message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any message received for transmission at the unrepeated message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any message received for transmission at the repeated message rate beyond the sum of five thousand dollars *unless specially valued;* nor in any case from delays arising from unavoidable interruptions in the working of its lines; nor for errors in cipher or obscure messages.

"2. In any event the company shall not be liable for damages for mistakes or delays in the transmission or delivery, or for nondelivery, of any message, whether caused by the negligence of its servants or otherwise, beyond the sum of five thousand dollars, at which amount each

message is deemed to be valued, unless a greater value is stated in writing by the sender thereof at the time the message is tendered for transmission, and unless the repeated message rate is paid or agreed to be paid, and an additional charge equal to one-tenth of one per cent. of the amount by which such valuation shall exceed five thousand dollars.

"3. The company is hereby made the agent of the sender, without liability, to forward this message over the lines of any other company when necessary to reach its destination."

This message was sent as an unrepeated message. It was, however, sent as an X U R message—that is, to be preferred as to the order of its transmission over other less important messages—and for this preference an extra charge of 3 cents per word was made and paid.

The usual time required for transmitting cablegrams from Birmingham, Ala., to Manchester, England, under X U R classification, was 10 to 15 minutes. A competitive line, the Postal Telegraph Company, was operating between those points on August 15, 1924.

The foregoing is the substance of the undisputed evidence in the case, as agreed upon by the parties.

The complaint is in four counts. Counts 1 and 2 aver that it was defendant's duty "to deliver the said cablegram at Manchester, England, in accordance with its contract before the close of the Liverpool market; or, in the event of its inability to do so, to promptly notify the plaintiffs." Count 1 declares upon defendant's negligent failure to promptly transmit and deliver; and count 2 declares simply upon its failure to deliver before the close of the Liverpool market.

Count 3 avers a breach of duty in this:

"That the defendant then and there knew that it would be unable to deliver the cablegram aforesaid before the close of the Liverpool market, but defendant wholly failed to inform or notify the plaintiffs of its inability to do so; and, as a proximate consequence thereof, the plaintiffs lost the sale of the aforesaid cotton, to their damage as aforesaid."

Count 4 avers:

That defendant, "at the time it entered into the aforesaid contract with the plaintiffs, knew or had notice it would be unable to carry out the terms thereof and to deliver said cablegram according to its agreement; but the defendant omitted and failed to notify the plaintiffs that it would be unable to perform, and, as a proximate consequence, * * * they lost the sale of the aforesaid cotton, to their damage as aforesaid."

The defendant pleaded the general issue in short by consent.

The trial court, sitting without a jury, rendered judgment for plaintiffs for a sum equaling the amount of their loss on the New York hedge sale, with interest thereon; and the defendant appeals.

Francis R. Starke, of New York City, and Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellant.

The duty of the defendant is to be determined with reference to the Interstate Commerce Act, provisions of the message blank, and defendant's rules on file with the Interstate Commerce Commission. Exclusive jurisdiction over the subject of interstate and foreign communications by telegraph has been committed by Congress to the Interstate Commerce Commission. West. Union v. Hawkins, 198 Ala. 682, 73 So. 973; West. Union v. Warten Cot., 208 Ala. 454, 94 So. 493; West. Union v. Barbour, 206 Ala. 129, 89 So. 299, 17 A. L. R. 103; Id., 210 Ala. 135, 97 So. 136; West. Union v. Beasley, 205 Ala. 115, 87 So. 858; West. Union v. Brown, 234 U. S. 542, 34 S. Ct. 955, 58 L. Ed. 1457; Postal Tel. Co. v. Warren-Godwin L. Co., 251 U. S. 27, 40 S. Ct. 69, 64 L. Ed. 118; Priester v. West. Union, 212 Ala. 271, 102 So. 376; West. Union v. Czizek, 264 U. S. 281, 44 S. Ct. 328, 68 L. Ed. 682; 41 Stat. at L. 474 et seq.; George N. Pierce Co. v. Wells Fargo & Co., 236 U. S. 278, 35 S. Ct. 351, 59 L. Ed. 576; Great Northern R. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943; Adams Ex. Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. For an unrepeated message the limit of liability is $500; the degree of negligence, if any, being immaterial. Adams Ex. Co. v. Croninger, supra; Wells Fargo v. Neiman-Marcus Co., 227 U. S. 469, 33 S. Ct. 267, 57 L. Ed. 600; B. & M. R. Co. v. Hooker, 233 U. S. 97, 34 S. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Southern R. Co. v. Reid, 222 U. S. 424, 32 S. Ct. 140, 56 L. Ed. 257; B. & O. R. Co. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189; K. C. Southern v. Carl, 227 U. S. 639, 33 S. Ct. 391, 57 L. Ed. 683; West. Union v. Esteve, 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094; Cultra v. West. Union, 44 I. C. C. 670; Tex. & Pac. v. Gulf R. Co., 270 U. S. 266, 46 S. Ct. 263, 70 L. Ed. 578. The connecting line stipulation in the message blank is valid and a complete defense to the action. Joyce on Elec. Law (2d Ed.) 1244; West. Union v. Way, 83 Ala. 542, 4 So. 844; 26 R. C. L. 576; 4 R. C. L. 891; West. Union v. Bowen, 203 Ala. 409, 83 So. 283. Plaintiffs were concluded by the stipulations in the message blank, whether aware of them or not. West. Union v. Prevatt, 149 Ala. 617, 43 So. 106. There was no special agreement for prompt transmission of the message which destroyed the $500 limitation. Payment of the X U R rate only gained preference over ordinary telegrams, and could not operate to waive the terms of the message blank. Davis v. Cornwell, 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848. Breach of a duty to notify cannot enlarge the measure of recoverable damages on an interstate telegram; the damages being fixed by federal law. Barbour v.

West. Union, 210 Ala. 135, 97 So. 136. The form of the action cannot enlarge the measure of recovery. Amer. Ry. Exp. Co. v. Levee, 263 U. S. 19, 44 S. Ct. 11, 68 L. Ed. 140; Ex. Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414. Defendant cannot be held negligent for failure to notify all its officers of the explosion at Liverpool at the moment of the explosion. 3 Cook on Corp. 2588; Watkins Salt Co. v. Mulkey (C. C. A.) 225 F. 739. It cannot be presumed that the message, if delivered to the Postal Line, would have reached Manchester without error or delay. St. L. S. F. v. Mills, 271 U. S. 344, 46 S. Ct. 520, 70 L. Ed. 979. If there was negligence, it must be shown to be the proximate cause of plaintiffs' loss. Cumberland Tel. Co. v. Atherton, 122 Ky. 154, 91 S. W. 257; S. W. Tel. Co. v. Thomas (Tex. Civ. App.) 185 S. W. 396.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellee.

Where parties make an agreement impossible of performance, and the impossibility is known to the promisor but not to the promisee, he must be taken to have intended to make himself absolutely liable. Where performance becomes impossible subsequent to the contract, the promisor is not thereby discharged. Paine v. Parkhurst (C. C. A.) 205 F. 740; Blome v. Wahl-Henius Inst., 150 Ill. App. 164; Griel Bros. v. Mabson, 179 Ala. 444, 60 So. 876, 43 L. R. A. (N. S.) 664; Brumby v. Smith, 3 Ala. 123; 9 Cyc. 627, 13 C. J. 639. If, from any cause, it is impossible to transmit a message, or if delay will be necessary, the company should inform the sender. Fleischner v. Pacific Post. Co. (C. C.) 55 F. 738; Postal Co. v. Nichols (C. C. A.) 159 F. 643, 16 L. R. A. (N. S.) 870; West. Union v. Cleveland, 169 Ala. 131, 53 So. 80, Ann. Cas. 1912B, 534; West. Union v. Hicks, 197 Ala. 81, 72 So. 356; West. Union v. Bickerstaff, 100 Ark. 1, 138 S. W. 997, Ann. Cas. 1913B, 242; Engelhard & Son v. West. Union, 176 Ky. 806, 197 S. W. 435; Davis v. West. Union, 198 Mo. App. 692, 202 S. W. 292; Carswell v. West. Union, 154 N. C. 112, 69 S. E. 782, 32 L. R. A. (N. S.) 611; Mackorell v. West. Union, 90 S. C. 498, 73 S. E. 359, 875. The Interstate Commerce Act or tariffs on file make no reference to extra urgent rates.

SOMERVILLE, J. [1, 2] Under the first count of the complaint, the plaintiffs assumed the burden of showing that the defendant *negligently* failed to promptly transmit and deliver plaintiffs' cablegram as it undertook to do. There is nothing in the evidence that tends to establish such negligence, unless it can be said that defendant's use of the British Post Office telegraph service, for transmission of the message from London to Manchester over the British line, was negligence per se, under the circumstances shown.

By the express terms of the contract, defendant was authorized "to forward this message over the lines of any other company when necessary to reach its destination." Defendant's British terminal, from whence it relayed its message to Manchester, had been put completely out of service the day before, August 14th, and the cablegram went to defendant's London office. Hence it cannot be presumed or inferred from those facts alone that resort to the British line in that emergency—there remaining at least forty-five minutes in which that line might make timely transmission and delivery to defendant's office at Manchester—was an act of negligence and a breach of defendant's duty to plaintiff. The evidence in fact is merely neutral.

[3] But under the second count the case stands differently. There plaintiffs declare simply upon defendant's *failure to deliver* before the close of the Liverpool market, a breach of contractual duty; and the burden was cast upon defendant, if it would escape liability for the breach, to show that its failure to deliver seasonably was not the result of any negligence or wrongful omission on its part. W. U. T. Co. v. Barbour, 206 Ala. 129, 131, 89 So. 299, 17 A. L. R. 103; W. U. T. Co v. Merrill, 144 Ala. 618, 622, 39 So. 121, 113 Am. St. Rep. 66; 26 R. C. L. 550, § 57.

[4-6] Defendant knew the nature of the message, and understood the pressing importance of its delivery at Manchester before 9:30 a. m., United States central time, or 4:30 p. m., British time. It had for that reason undertaken, for an extra charge, to give this message a preferential standing over all ordinary messages filed for transmission ahead of it; thus recognizing a reasonable danger of fatal delay if transmission followed the ordinary course without such a preference. It was therefore the manifest duty of defendant to notify the British line of the nature of the message and the urgency of its delivery before 4:30 p. m., and to arrange with that line, if possible, for the preferential handling of the message over its wire from London to Manchester, if necessary, by the payment of an extra charge. And, to acquit itself of negligence, defendant was bound to show either that those things were done, or that they could not be done; and, if the latter, defendant should further have shown that no other and speedier mode of transmission, however circuitous, was then available. W. U. T. Co. v. Fuel, 165 Ala. 391, 396, 51 So. 571. When a message is transmitted in its turn, in the order of its reception, due diligence has been shown, and an injurious delay resulting necessarily from the prior handling of messages previously filed imposes no liability. And this court has said that "messages must be sent in the order of their handling in, without favor or partiality." Daughtery v. Am. Un. Tel. Co., 75 Ala. 168, 178 (51 Am. Rep. 435). But these rules do not affect the question of defendant's diligence in securing the promptest possible action by the British line, and insuring by every precaution reasonably possible a *sufficiently* speedy transmission of the message. Defendant's duty, growing out of its own undertaking, was not fully and properly discharged by *merely handing over* the message in cipher to the British line (a government agency, presumptively immune to liability for its negligence) for transmission, with only 40 or 50 minutes remaining for a timely and effective delivery to defendant's office at Manchester. And we think it is reasonable to infer that, if the indicated duty had been performed, the message would have been more speedily handled, and would have been delivered in due time to Bashley at Manchester.

We therefore hold that, under the evidence, defendant was legally responsible for the delay between London and Manchester, and must answer in damages under the second count of the complaint.

The third and fourth counts are based upon the allegation that defendant knew, at the time it accepted the message for transmission, that it would be unable to deliver it before the close of the Liverpool market (third count), or that it would be unable to carry out the terms of its agreement, and deliver according to the agreement (fourth count), and that, knowing this, defendant failed to inform plaintiffs of that inability to perform.

[7] The evidence does not sustain the allegation that defendant knew, *at the time it accepted the message*, that it would be unable to deliver it as it contracted to do. Conceding, without deciding, that defendant's Birmingham office had constructive knowledge of the mishap to its Liverpool terminal, preventing the direct handling of cablegrams to Manchester, and possibly entailing some delay therein, this falls very far short of knowing that it could not execute its undertaking to transmit and deliver plaintiff's message, which included the right to use other lines when necessary.

[8] On the face of the evidence, defendant was perfectly able to substantially perform its contract, and the failure to do so, seasonably and satisfactorily, was due to its subsequent omission of a collateral duty. The result is that plaintiffs show no right to recover under counts 3 and 4. And, it may be noted, under those counts no recovery could be had on account of the New York hedge transaction, because no damages in that behalf were claimed.

Prior to the federal act of 1910, amending the Interstate Commerce Act (49 USCA § 1; Comp. St. § 8563), telegraph companies "had a common-law liability from which they might or might not extricate themselves ac-

cording to views of policy prevailing in the several states. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed." W. U. T. Co. v. Esteve Bros., 256 U. S. 566, 572, 41 S. Ct. 584, 586 (65 L. Ed. 1094). In that case the action was for error in the transmission of an unrepeated cable message, and the court declared that "the limitation of liability attached to the unrepeated cable rate is binding upon all who send messages to or from foreign countries until it is set aside * * * by the Commission." See, also, Postal Tel.-Cable Co. v. Warren-Godwin Co., 251 U. S. 27, 40 S. Ct. 69, 64 L. Ed. 118; W. U. T. Co. v. Czizek, 264 U. S. 281, 44 S. Ct. 328, 68 L. Ed. 682; and W. U. T. Co. v. Priester, 48 S. Ct. 234, 72 L. Ed. ——.

[9,10] In the instant case, defendant's liability is effectually limited to $500, and under the federal decisions we are bound to give effect to this limitation. As to this, it is immaterial under what count or counts plaintiffs might be entitled to recover, for the limitation is equally effective upon all. The rate and limitation prescribed represented "the whole duty and * * * liability of the company." W. U. T. Co. v. Esteve Bros., 256 U. S. 566, 572, 41 S. Ct. 584, 586 (65 L. Ed. 1094). And, as said in Barbour v. W. U. T. Co., 210 Ala. 135, 97 So. 136:

"It is immaterial in what form of action the plaintiff claims his damages for mental anguish [here for a lost sale] whether for failure to perform the initial duty to transmit or deliver, or negligence in failing to notify the sender of defendant's inability to deliver, after having undertaken the interstate transmission and delivery of the message."

Though regarded, in a sense, as a separate and distinct obligation from the primary obligation to transmit and deliver (W. U. T. Co. v. Barbour, 206 Ala. 129, 131, 89 So. 299, 17 A. L. R. 103), the obligation to inform the sender of inability to deliver is a duty implied from the primary undertaking, and is strictly subordinate to all of its terms; and, indeed, it seems axiomatic that no merely derivative and secondary obligation can impose a larger liability than the primary obligation itself. Here the limitation of liability affects the entire contract, its implied terms equally with its expressed terms, and it cannot be escaped by the adoption of any particular form of action on the contract.

Our conclusion is that plaintiffs are entitled to recover in this action $500 and not more. The judgment of the circuit court will be corrected by reducing the recovery to that amount, and, as thus corrected, will be affirmed.

Corrected and affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

### On Rehearing.

SOMERVILLE, J. [11] When a judgment is corrected and affirmed on appeal, with any substantial change in the amount or terms of the judgment, favorable to the appellant, the costs of the appeal are automatically cast upon the appellee, just as in cases of nominal reversal.

This being the practice, it was not necessary to mention the matter of costs in the opinion. It may as well be said, however, that the costs of the appeal in this case will fall upon the appellee.

We adhere to the conclusions stated in the original opinion, and the application will be overruled.