ON APPLICATION FOR REHEARING
Our original opinion in this case is withdrawn, and the following opinion is substituted therefor.
This is an appeal by Western Union of the denial of a Rule 60(b)(6), A.R.Civ.P., motion by the Circuit Court of Mobile County. The underlying suit was filed by Roger C. Crowder, d/b/a R.C. Contractors and Equipment Sales ("Crowder"), against Western Union for negligence and breach of contract in the transmission of a telegram, which negligence and breach allegedly caused Crowder $12,000 in damages.
On November 18, 1985, Crowder went to the Western Union office for the purpose of sending to the United States Corps of Engineers the following bid change:
 "Ref. Bid submitted by R.C. Contractors on bid project DACW 54-86-B-0003 DIKING. Increase bid item # 1 by Twelve Thousand ($12,000.00) Dollars, making TOTAL BID Two Hundred Thirty Two ($232,000.00) Thousand Dollars."
Crowder contends that Western Union told him that the bid change would be delivered to the Corps of Engineers on the afternoon of November 18, 1985. However, the bid was mishandled and the change was not transmitted as it should have been by Western Union, and Crowder claims he was damaged to the extent of $12,000.
Prior to litigation, Crowder wrote Western Union, complaining about the mishandling of the telegram and requesting to be made whole. On March 24, 1986, Edward Weissman, associate counsel for Western Union, in Upper Saddle River, New Jersey, wrote Crowder and offered him $500 in settlement of his claims and indicated that Western Union was regulated by the Federal Communications Commission and was governed by a tariff that limited the company's liability to $500.
Crowder then sued. Weissman received a summons and a complaint against Western Union on September 10, 1986, after they had been served on Western Union's agent on September 2, 1986. Weissman's secretary contacted Crowder's attorney, Joseph Kulakowski, to get an extension of time to answer the complaint in the lawsuit. On October 9, 1986, Weissman wrote a letter to Kulakowski, in which Weissman acknowledged Kulakowski's "consent to an extension of 30 days to answer your complaint." Weissman's letter concluded as follows:
 "I would like to take this opportunity to renew our offer of $500 to settle this matter pursuant to the terms of the tariff.
 "I would appreciate your calling me after you have reviewed this letter and the tariff section so that we may discuss this at greater length. Again thank you for your courtesies."
The facts so far are without dispute. The following matters are disputed:
Weissman claims that he telephoned Kulakowski one week after this letter was written and that Kulakowski told him that he would not take further action in the case until after he had spoken to Crowder; and Weissman claims that, following up this conversation, he wrote a letter to Kulakowski, dated October 16, 1986, confirming this *Page 878 
conversation. According to Kulakowski, he never spoke to Weissman and never received the October 16, 1986, letter from Weissman. He says that it was a fabrication. One reason he says that it is a fabrication is because Weissman did not appear at the hearing on the Rule 60(b)(6) motion, at which he could have given testimony to the court to this effect, and would not take a lie detector test, although Kulakowski would.
Kulakowski, who denies receiving the October 16, 1986, letter, says he waited 187 days beyond the 30-day extension he gave Western Union before moving for a default judgment. He further states that 164 days elapsed between the entry of the judgment and the filing of Western Union's Rule 60(b) motion to set the judgment aside.
First, Western Union urges us to reverse the denial of the Rule 60(b) relief because, it says, 1) as a practical matter, it had appeared in the initial case when it made contact with Kulakowski and obtained an extension of time to file an answer and wrote the letters of October 9 and October 16, 1986, and 2) the default judgment was therefore improper. It says that because it had appeared in the case, the plaintiff was due to give three days' notice prior to applying for a default judgment, as required by Rule 55(b)(2), A.R.Civ.P., which provides:
 "If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served by written notice of the application for judgment at least three days prior to the hearing on such application. . . ."
We are of the opinion that there was no appearance by Western Union.
Although recently we have had the occasion to consider the legal principles that interplay in the exercise of the trial judge's discretion in setting aside a default judgment, we have had only one opportunity to consider what is an "appearance" in the context of Rule 55(b)(2), A.R.Civ.P. See Bracknell v. S.E.Belcher, Inc., 517 So.2d 588 (Ala. 1987). See also, Kirtland v.Ft. Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala. 1988), and Ex parte Illinois Central Gulf R.R., 514 So.2d 1283
(Ala. 1987). One of our earlier cases, Cockrell v. World'sFinest Chocolate Co., 349 So.2d 1117 (Ala. 1977), does shed some light on the problem in this case, although the facts in that case are somewhat different from the facts in this case. In Cockrell, the plaintiff, on April 3, 1975, filed suit against the defendant, and on April 10, 1975, the defendant was served with a copy of the summons and the complaint. On May 8, 1975, the defendant filed a document in court giving the style of the case and the case number and entitled "Answer of the Defendant." In the document, the defendant's attorney stated that he would be replying in a few days, that the defendant had been out of town since being served, and that his attorney would be in contact very soon. On June 17, 1975, without notice to the defendant, plaintiff filed a motion for, and obtained, a default judgment. This Court held that the document the defendant filed on May 8, 1975, constituted an appearance and, because the defendant was not given the three days' notice required by Rule 55(b)(2), A.R.Civ.P., the default judgment had to be vacated regardless of whether the defendant had shown a meritorious defense.
The Court went on further to define an "appearance":
 "An appearance in an action involves some submission or presentation to the court by which a party shows his intention to submit himself to the jurisdiction of the court. Port-Wide Container Co., Inc. v. Interstate Maintenance Corp., 440 F.2d 1195
(3rd Cir. 1971); H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 139 U.S.App.D.C. 256, 432 F.2d 689 (1970); Anderson v. Taylorcraft, Inc., 197 F. Supp. 872 (W.D.Pa. 1961). See also Wright Miller, supra at § 2686; Anno., 27 A.L.R.Fed. 620; Anno., 73 A.L.R.2d 1250."
A more recent case considering the meaning of "appearance" in a Rule 55(b)(2), A.R.Civ.P. setting is Hen House, Inc. v.Robertson, 410 So.2d 42 (Ala. 1982). In that case, plaintiffs, the Robertsons, filed *Page 879 
suit against Hen House, Inc., concerning the lease of premises owned by it. The suit was filed on October 24, 1980, and was served on Hen House, Inc., on November 11, 1980. On December 15, 1980, plaintiffs moved for an entry of default judgment, and on December 23, 1980, the circuit court entered a default judgment against the defendant. On March 16, 1981, the defendant filed a motion for relief from the judgment, claiming that the plaintiff had not given it three days' notice as required by Rule 55(b)(2), A.R.Civ.P. The defendant pointed out that on October 27, 1980, it had filed a suit against the plaintiffs involving the same lease and argued that such a suit was a constructive answer to the plaintiffs' later suit. Furthermore, on November 14, 1980, the defendant had written a letter to plaintiffs informing them of this prior suit and also acknowledging receipt of plaintiffs' summons and complaint, and inviting negotiations to clear up any misunderstandings concerning the subject matter of the litigation. This Court held in Hen House, that, given the subject matter of the cases filed in the district and circuit courts, together with defense counsel's correspondence with plaintiffs' counsel, the defendant was deemed to have made an appearance for purposes of Rule 55(b)(2), A.R.Civ.P., and, therefore, was entitled to three days' notice before a default judgment could be taken. A similar result was reached by the Court of Civil Appeals inDial v. State, 374 So.2d 361 (Ala.Civ.App. 1979).
Our research, however, does not reveal an Alabama case that has found a letter or letters exchanged between plaintiff's and defendant's counsel to be an "appearance" within the meaning of Rule 55(b)(2). In each case finding an appearance, some writing has been filed in court to indicate an intention to defend the action. However, the federal courts have treated letters as an "appearance." See H.F. Livermore Corp. v. AktiengesellschaftGebruder Loepfe, 432 F.2d 689 (D.C. Cir. 1970); Charlton L.Davis Co. v. Fedder Data Center, Inc., 556 F.2d 308 (5th Cir. 1977). The rationale of those cases, if applied to the present case, would require a holding that an appearance had been made, since under those cases mere correspondence between plaintiff's and defendant's counsel wherein defendant gives an indication that the defendant is serious about defending the case is sufficient to constitute an appearance. Although we attempt to weave a consistent pattern with our interpretations of our rules of civil procedure, which were patterned after the federal rules of civil procedure, we are constrained not to follow the federal precedent in this case. See Weatherly v.Baptist Medical Center, 392 So.2d 832 (Ala. 1981). We do not do so, for important policy considerations. We do not believe that trial counsel should have authority to enlarge the time for answering a complaint without some filing, as meager as it might be, with the court. In Cockrell, it was a letter document indicating that counsel was interested in defending the case, but was, because of the exigencies of the situation, unable to answer the complaint at that time and would do so in due course. This course of action would have been expedient in this case and would have prevented the problem now before us.
Because counsel did not file a written memorandum or document with the circuit court, we hold that no appearance was made to invoke the three-days' notice requirement of Rule 55(b)(2), A.R.Civ.P.
Western Union presents a second basis for reversal of the denial of relief, pointing out that the judgment exceeds the maximum liability allowed by federal law. We reverse and remand, with instructions to the trial court to enter judgment against Western Union for no more than $500.00, pursuant to applicable federal statutes and regulations and Alabama case law.
Western Union has been regulated by the Federal Communications Commission, since enactment of the Communications Act of 1934, 47 U.S.C.S. § 151 et seq. (Law. Co-op. 1981), "[f]or the purpose of regulating interstate and foreign commerce in communication by wire and radio."47 U.S.C.S. § 151 (Law.Co-op. 1981). Pursuant to 47 U.S.C.S. § 203(a) (Law.Co-op. 1981), Western Union filed with the FCC schedules *Page 880 
"showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication," including a tariff limiting its liability for mistake in the transmission or delivery of a message:
 "The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated message rate beyond the sum of $500."
FCC No. 255 at 2.1.3(A)(1).
This Court has acknowledged the supremacy and preemption of federal law in the determination of damages arising from interstate transmission of telegrams. In Western UnionTelegraph Co. v. Bashinsky, Case Co., 217 Ala. 661,117 So. 289 (1928), Justice Somerville wrote:
 "'Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed.' W.U.T. Co. v. Esteve Bros., 256 U.S. 566, 572, 41 S.Ct. 584, 586 ([65] L.Ed. 1094).
 "In the instant case, defendant's liability is effectually limited to $500, and under the federal decisions we are bound to give effect to this limitation. As to this, it is immaterial under what count or counts plaintiffs might be entitled to recover, for the limitation is equally effective upon all. The rate and limitation prescribed represented 'the whole duty and . . . liability of the company.' (Citation omitted.) And, as said in Barbour v. W.U.T. Co., 210 Ala. 135, 97 So. 136:
 " 'It is immaterial in what form of action the plaintiff claims his damages for mental anguish [here a lost sale] whether for failure to perform the initial duty to transmit or deliver, or negligence in failing to notify the sender of defendant's inability to deliver, after having undertaken the interstate transmission and delivery of the message.'"
Bashinsky, 217 Ala. at 666, 117 So. at 294. (Regulation of wire and wireless transmission service was handed over to the FCC by the Communications Act of 1934 from the Interstate Commerce Commission.)
The public policy consideration behind the limitation is "to secure reasonable and just rates for all without undue preference or advantage to any." Western Union Tel. Co. v.Priester, 276 U.S. 252, 48 S.Ct. 234, 72 L.Ed. 555 (1928). See47 U.S.C.S. § 202(a) (Law.Co-op. 1981): "It shall be unlawful for any common carrier . . . to make or give any undue or unreasonable preference or advantage to any particular person. . . ." To that end, the statutory provisions of47 U.S.C.S. § 203 require that applicable rates be established in a manner calculated to give them publicity, to make them inflexible while in force, and to cause them to be unalterable except in the manner prescribed by statute. See Re: A. T. T., 42 F.C.C.2d 654 (1973).
Consequently, the default judgment entered in the instant case should have been entered for no more than $500. We will note for the record, however, our extreme displeasure with Western Union's failure to appear and plead the statutory limitation in a timely fashion. Its failure to meet its obligations in pleading has caused this litigation to be unnecessarily protracted through no fault of the plaintiff, and, but for the fact that we are constrained by federal statute and regulation and precedent, we would not hesitate to affirm the denial of relief.
Nevertheless, in light of the fact that the plaintiff waited 187 days beyond the 30-day extension before moving for a default judgment, and that 164 days elapsed between the entry of the default judgment and the filing of Western Union's Rule 60(b) motion, we see fit to award the plaintiff a reasonable attorney's fee, to be determined by the trial court, and to tax all costs to Western Union. From all indications, Western Union willfully or negligently failed to appear, plead, and defend this *Page 881 
lawsuit; and, in doing so, it has strained this Court's patience with its neglect in asserting its statutory defense, and with its seeking appellate relief from a judgment grounded on an issue that could have disposed of the lawsuit at its inception. See 47 U.S.C.S. § 206 (Law.Co-op. 1981); KomatzConstruction Inc. v. Western Union Tel. Co., 290 Minn. 129,186 N.W.2d 691 (1971); and Reynolds v. First Alabama Bank ofMontgomery, 471 So.2d 1238 (Ala. 1985).
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and SHORES, HOUSTON and STEAGALL, JJ., concur.