73 So.2d 364

### LOOP NAT. BANK OF MOBILE

v.

### COX et al.

I Div. 461.

Supreme Court of Alabama.

Jan. 14, 1954.

Rehearing Denied June 17, 1954.

Vickers & Thornton, Mobile, for appellant.

GOODWYN, Justice.

Don N. and Dorothy A. Cox filed in the circuit court of Mobile county, in equity, a bill of complaint described therein as being "in the nature of a bill of interpleader". Named as respondents are Loop National Bank, appellant here, Harriett A. and Frank A. Bailey, individually and as partners doing business as Frank A. Bailey Lumber Company, Jack C. Gallalee, and V. R. Jansen, as trustee in bankruptcy of Wayne E. Banks. The contents of the bill may be found in the opinion on the first appeal in this case. Loop National Bank of Mobile v. Cox, 255 Ala. 388, 51 So.2d 534.

For the purposes of the present appeal, the salient facts are as follows: On November 30, 1949, Cox entered into a contract with Banks whereby banks agreed to build a house and garage for Cox on Cox' property for 110% of the cost of labor and materials, but not to exceed $7,500. Cox also agreed, in said contract "to advance to W. E. Banks $2,000 in cash and execute first mortgage on house to be built, until house is complete and loan secured".

Hamilton, Denniston, Butler & Riddick, John T. Gray, Mobile, for appellees Cox.

Caffey, Gallalee & Caffey, Mobile, for appellee Gallalee.

150

Coincident with execution of the contract, Cox paid said $2,000 on the contract price. Banks began construction of the improvements but, on June 16, 1950, abandoned the work before completion. Cox completed it at a total cost of $2,851.65, leaving a balance of $2,648.35 due under the contract. Gallalee and Bailey filed separate claims against the property in the amounts of $230.14 and $764.35, respectively. The Gallalee claim is based on a written assignment from Banks, dated June 2, 1950, it being recited therein that the assignment is of a "debt" owed by Cox to Banks for millwork going into said improvements. The Bailey claim is for lumber furnished Banks and used by him in making said improvements. On or about January 11, 1950, Cox executed and delivered to Banks an undated promissory note for $4,000, payable to the order of Banks four months after date, and also, as security for payment of said note, an undated mortgage on the property being improved. According to the Coxes, and as averred in their bill, "said note evidenced a part of the contract price and was executed and delivered with the mutual understanding and condition precedent that the note would not be used or negotiated until the construction of the dwelling and garage had substantially progressed, and in no event until the complainants were further consulted." The mortgage was neither witnessed nor acknowledged. Thereafter, Banks had the acknowledgments completed by a Notary Public who was in the Loop Bank's employ as a paying and receiving teller. The Coxes at no time appeared before the Notary. It is not clear when the acknowledgments were actually filled in. However, they bear date of January 12, 1950, in the handwriting of the Notary. Neither Banks nor the Notary testified. On February 28, 1950, Banks endorsed the note and transferred and assigned it and the mortgage to the Loop Bank. A vice-president of the Bank filled in the date of the note to correspond with the date of the mortgage acknowledgments, viz.: January 12, 1950, which had the effect of making the note due and payable on May 12, 1950, "four months after date". On the face of the note is the following notation placed thereon by the Bank's vice-president: "With (90 day min.) TMR R (Int. 48.67) Int. from 2/28/50"; also the following: "73 days-- 48.67". The face value of the note ($4,000) was credited to Banks' general checking account with the Bank on February 28, 1950. Nothing else of value passed from the Bank to Banks as a consideration for the note. The balance in Banks' account on February 28, 1950, after being credited with the $4,000, stood at $9,161.37. From that time until May 12, 1950, the maturity date of the note, the balance in his account fluctuated between a high of $16,855.61 and a low of $1,688.06. At no time between February 28, 1950, and May 12, 1950, was the account exhausted. Admitted in evidence was a check dated May 15, 1950, drawn by Banks to the order of the Coxes, in the amount of $48.67 and bearing their endorsements. Typewritten under their signatures is the following: "Paid to Loop National Bank for interest on note". This check was delivered by Banks to the vice-president of the Loop Bank on May 20, 1950. On the front of the check is a stamp showing that it was handled by Teller 1 on May 20, 1950. On delivery of this check, the Bank's vice-president struck out the due date of May 12 on the note, which he had placed there on February 28, 1950, and wrote in "Aug. 10". At the same time he made the following notation on the back of the note, under Banks' endorsement: "May 20 1950 Int. paid 48.67 from 2/28/50 to 5/12/50". At the beginning of business on May 12, 1950, the balance in Banks' account was $2,440.61; at the close of business on that day, the balance was $1,694.17. At the close of business on May 13, 1950, the balance was $5,361.74. Thereafter, there was a gradual reduction of the balance until it was closed out on May 23, 1950.

Both Bailey and Gallalee filed answers and cross-bills setting forth their respective claims. The Loop Bank demurred to the bill, taking the point, as here insisted on, that the bill cannot be sustained as a bill in the nature of a bill of interpleader. The demurrer was overruled. The Bank then filed its answer and cross-bill. By its cross-

bill, the Bank sought a decree in its favor against the Coxes "for the amount due on said note together with interest thereon, together with a reasonable attorney's fee, with waiver of exemptions", and also ordering "said real estate to be sold pursuant to the power granted in said mortgage and the proceeds from said sale * * * applied in accordance with the provisions of said mortgage". The Coxes filed an answer to the Bank's cross-bill and also to the cross-bills of Bailey and Gallalee. The trustee in bankruptcy of Banks filed an answer to the original bill denying its allegations and demanding strict proof thereof, but did not file a cross-bill. On the issues thus made up, testimony was taken orally before the court. The court then rendered the following final decree, from which the Bank prosecutes this appeal, viz.:

"This cause coming on to be heard and evidence having been submitted by all parties to said bill in support of their respective claims, and the Court being of the opinion that the Complainants are not bound by the terms of the alleged mortgage given in security of the note held by the Respondent, Loop National Bank, but are indebted for the balance due under their contract with Wayne E. Banks in the amount of $2,648.38, and the Court being of the further opinion that said sum is subject to the two lien claims filed in said cause, the remainder to follow the note transferred by the said Banks to the Loop National Bank,

"It is, therefore, ordered, adjudged and decreed that the said sum of $2,648.38 be paid to the Register of said Court to be distributed by him, after deducting the costs accrued in said cause, as follows: $500.00 to be paid to the Attorneys for Complainants, $764.35 to Frank A. Bailey Lumber Company, $230.14 to Jack Gallalee, and the balance to the Loop National Bank, transferee of the note from Wayne E. Banks.

"This 3rd day of May, 1951.

"D. H. Edington.
"Judge."

The errors here complained of, as we understand them, may, in short, be stated as follows:

I. That the Bank's demurrer to the bill of complaint should have been sustained. The insistence is that the bill is not sufficient as a bill in the nature of a bill of interpleader because the complainants do not stand in the position of a stakeholder, that is, "the same thing, debt, or duty" is not "claimed by the parties sought to be interpleaded"; and, further, that the Bank is misjoined as a party because "there is no stake * * * which appellant and someone else claim". The position taken is, to quote from brief, that the Bank "wins, if at all, under the note or mortgage signed by plaintiffs" and "whether there are any materialmen or whether plaintiffs owe the contractor a balance are matters of complete indifference to appellant".

II. That the Bank is a holder in due course of the note and, as such, took it free of any defects. The import of this insistence is that, since the trial court held, in overruling the demurrer to the bill, that the Bank is not misjoined as a party, the court should have decreed recovery by the Bank against the Coxes of the full amount of the note, together with interest thereon, an attorney's fee, and with waiver of exemptions, as sought by the Bank's cross-bill.

III. That no allowance should have been made to complainant's attorneys out of the fund at stake.

IV. That the Gallalee claim should have been disallowed. The insistence is that, since the contractor was in default in the performance of the contract, Gallalee, as his assignee, is, like the contractor, deprived of a materialman's lien.

I.

The Bank's demurrer to the bill was properly overruled. We are satisfied that the bill is sufficient as a bill in the nature of a bill of interpleader under Equity Rule 36, Code 1940, Tit. 7 Appendix. Perdue v. State Nat. Bank, 254 Ala. 80, 47 So.2d 261, 264; Johnson v. Malone, 252 Ala. 609, 612, 42 So.2d 505.

152

■ There is an acknowledged balance of $2,648.35 due under the contract with Banks. Both Bailey and Gallalee filed their claims in the office of the judge of probate. Bailey has an undisputed materialman's lien which gives him a lien claim on such balance. Code 1940, Tit. 33, Sect. 37. It might be questioned whether the Gallalee claim is one simply of assignment of debt owed by Cox to Banks, or the assignment of a claim which might be the basis of a lien. But whether it is one or the other is not material under the facts of this case. The assignment to Gallalee certainly makes of him a claimant against the balance due under the contract.

It appears that the trial court treated the transfer of the note to the Bank, in effect, as subrogating the Bank to the rights of Banks in the balance due under the contract; for, otherwise, there would be no basis for ordering payment of any part of said balance to the Bank. The effect, insofar as the Bank's right to participate is concerned, is that the Bank stands in the shoes, so to speak, of the contractor, Wayne E. Banks. When so considered, the Bank has a claim against the amount at stake and is a proper party to the proceedings. Certainly, in view of our holding that the Bank is not a holder in due course of the note, the Bank cannot be said to be hurt by the award in its favor. In this connection, we do not understand appellees to insist that error was committed in allowing the Bank to participate in the interpleaded fund. Being so, we pretermit consideration of the validity *vel non* of the decree in that respect.

II.

It is conceded that if the Bank is a "holder in due course", Code 1940, Tit. 39, Sect. 54, it would be entitled to a decree in its favor, on its cross-bill, for the full value of the note free from any defenses available to the maker of the note. Code 1940, Tit. 39, Sect. 59. On the other hand, if it is not a holder in due course, it takes the note subject to any of the defenses available to the maker, appellee Cox. Code 1940, Tit. 39, Sect. 60.

■ We are of the opinion that the court was correct in holding, in effect, that appellant Bank is not a holder of the note in due course, for the reason that at the time it took the note the note was not "complete and regular upon its face", as required by Code 1940, Tit. 39, § 54(1).

On original consideration, we held that appellant was not a holder in due course because it did not take the note for "value", as required by Code 1940, Tit. 39, Sect. 54(3). In support of this conclusion, we cited the following cases: W. E. Herron Motor Co. v. First National Bank, 226 Ala. 434, 147 So. 198; Colorado Nat. Bank v. Western Grain Co., 218 Ala. 339, 118 So. 588; National Bank of Commerce v. Morgan, 207 Ala. 65, 92 So. 10, 24 A.L.R. 897; Sherrill v. Merchants' & Mechanics' Trust & Savings Bank, 195 Ala. 175, 70 So. 723; Tatum v. Commercial Bank & Trust Co., 185 Ala. 249, 64 So. 561; Alabama Grocery Co. v. First National Bank of Ensley, 158 Ala. 143, 48 So. 340; Citizens' Nat. Bank v. Bucheit, 14 Ala.App. 511, 71 So. 82, certiorari denied 196 Ala. 700, 72 So. 1019. We did not then discuss whether the note was "complete and regular upon its face". On reconsideration, we deem it preferable to base an affirmance on a finding that it was not "complete and regular upon its face" when it was transferred by Banks to the Bank, rather than on the ground that the Bank did not take it for "value". We here observe that the Bank's insistence on rehearing is that it is a holder in due course *"pro tanto* to the extent of the exhaustion of the account prior to maturity of the note", Code 1940, Tit. 39, § 56; that is, the difference between the amount of the note ($4,000.00) credited to Banks' account and the lowest balance ($1,688.06) in his account prior to maturity of the note. That argument, of course, necessarily assumes that all other requirements as to being a "holder in due course" have been met. In view of our holding that the Bank is not a holder in due course because the note was not "complete and regular upon its face", we put to one side the question as to whether the Bank is entitled to a *pro tanto* recovery.

"Under an express provision of the Negotiable Instruments Act, a holder, in order to be a holder in due course, must have taken the instrument when complete and regular on its face." 10 C.J.S., Bills and Notes, § 328, p. 825. In this connection, Code 1940, Tit. 39, Sect. 54(1), provides as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That the instrument is complete and regular upon its face. * * *"

It is unassailably clear from the evidence that the note, when transferred by Banks to the Bank, contained unfilled blanks. It was made payable "four months after date", but it bore no date. Without a date it was not payable "at a fixed or determinable future time" as required by Code 1940, Tit. 39, § 8(3). Sect. 8(3) provides that "An instrument to be negotiable must conform to the following requirements: * * * (3) Must be payable on demand or at a fixed or determinable future time." The date in this note, therefore, is essential to its negotiability. Thus, the materiality of the date is obvious. But it was not until transfer of the note to the Bank that the date was inserted; and this was done by the Bank's vice-president, contrary to the agreement between the Coxes and Banks, by inserting "Jan. 12, 1950" in the blank space provided for that purpose. The vice-president also, at the same time, filled in the due date in the blank space provided therefor as being "May 12". This official of the Bank thus described the note: "Well, it has got 'with', which means with interest, ninety day minimum, my initials, I put the address of the Coxes at the bottom in my handwriting, and the maturity, May 12th, my handwriting, and the date of the note, January 12, 1950, in my handwriting." Clearly, the note was not complete and regular upon its face at the time of its transfer to the Bank. The Bank, therefore, did not become a holder in due course of the note. Wilkins v. Reliance Equipment Co., 259 Ala. 348, 67 So.2d 16;

Goff v. Morgan County Nat. Bank, 144 Fla. 671, 198 So. 484. As transferee, the Bank is subject to any defense which the makers (the Coxes) have against Banks, the payee-transferrer. And there is no dispute that the Coxes have a complete defense to the note as against Banks.

III.

■ The allowance of attorneys' fees in interpleader actions in equity, to be paid out of the interpleaded fund, is specifically authorized by Equity Rule 36, supra. The predecessor to this rule, Sect. 10390, Code 1923, also provided for such allowances. As stated in ·Collins v. Baxter, 231 Ala. 247, 252, 164 So. 61, 65:

"And as to the theory of interpleader our statute (section 10390, Code 1923) leaves much to the discretion of the trial court concerning the taxation of cost and the allowance of counsel fees out of the fund."

See, also, Johnson v. Malone, 252 Ala. 609, 617, 42 So.2d 505; Jennings v. Jennings, 250 Ala. 130, 133, 33 So.2d 251. The reasonableness of the fee is not questioned; and error was not committed in allowing it.

IV.

■ We see no need for further discussion of the Gallalee claim, except to say that, as assignee of part of the balance due under the contract, he is entitled to participate in that balance. The fact that a defaulting contractor's right to a lien has been lost does not affect his right to an admitted balance due under the contract. Although the lien for enforcement of a claim might be lost, the claim itself continues in force; the only difference resulting from the loss being to require collection of the claim without the aid of the lien.

Original opinion modified on application for rehearing and decree affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.