189 So.2d 346

A. E. WOOD

v.

CITRONELLE–MOBILE GATHERING SYSTEM CO., Ltd., et al.

I Div. 332.

Supreme Court of Alabama.

June 16, 1966.

Rehearing Denied Aug. 25, 1966.

Thornton & McGowin, Mobile, for appellant.

Lyons, Pipes & Cook, Mobile for appellees.

MERRILL, Justice.

This is an appeal by respondent Wood from a final decree in an interpleader suit granting relief to complainant, Citronelle-Mobile Gathering System Company, Ltd., et al., after a hearing.

Respondent Wood claims to own .27 of an acre in a 40-acre tract of land under which is a pool of oil. Wood did not lease his oil interest and no pump is located on his property. This 40 acres was a unit operation under Act 352, Acts of Alabama 1957, approved August 23, 1957, listed as Art. 4, Tit. 26, §§ 179(70)–179(78), Recompiled Code 1958. This means that the State Oil and Gas Board may require unit operation of a pool and the owner of the oil interest shall receive his pro rata share of the proceeds from the pool and bear his pro rata share of the expenses of production.

This unit was operated by Gulf Oil Corporation when the well came in; it was later operated by Citmoco Field Opera-tions, Inc., and they were succeeded by the present operator, Unit Manager, Citronelle Unit.

It was the custom and regular procedure of the oil business generally for oil purchasers to require an attorney's title opinion of the owners of mineral interests before releasing the money accrued from sales to the owner. Since Wood owned only .27 acres, his pro rata share amounted to payments varying from $15 to $41 per month. Due to the cost of an abstract and title opinion, he did not furnish same and he received no payments. He sued complainant in trover and recovered a judgment for $620.42 in February, 1964, his pro rata share of the proceeds from the sales of oil up to that time.

Because of the suit, complainant, on June 17, 1964, filed a bill of interpleader against Wood and some forty-odd predecessors in title. The bill alleged that complainant did not know the true owner, it had been sued by Wood and had paid the judgment; and it paid into court the money ($608.45) then due the owner of the .27 acres, and proposed to pay the proper amount due each month thereafter.

Wood demurred to the bill and it was sustained on the ground that it was not shown that there were multiple claims to the money paid into court. The bill was then amended by adding an additional party respondent, "Unit Manager, Citronelle Unit," and alleging in the bill that the Unit Manager, Citronelle Unit, was John E. Stein of Citronelle; and that two or more of the respondents claimed some right, title or interest in the minerals or some lien or encumbrance thereon.

The demurrer to the amended bill was overruled and the cause came on to be heard.

The trial court ordered that the amount accrued ($747.51) be paid to Wood; that Wood pay Unit Manager, Citronelle Unit, $73.55, his pro rata share of the costs of production; that complainant continue to pay Wood; that Wood pay his share of the costs of production within thirty days

after being billed for same; that Unit Manager, Citronelle Unit, have a lien on Wood's share of the oil and its proceeds to pay the pro rata cost of production; that the costs be taxed against complainant; and that jurisdiction of the cause was retained to enforce the lien if necessary.

Appellant argues first that there were not two claimants to the money and cites our statement in Finn v. Missouri State Life Ins. Co., 222 Ala. 413, 132 So. 632, that: "The first essential ground of interpleader is that the same thing, debt, or duty must be claimed by the parties sought to be interpleaded." (Other cases cited in brief hold similarly). But all the cases cited were decided prior to the effective date of the Equity Rules, January 1, 1940.

 We have held and the Legislature has said that the Equity Rules adopted by this court in 1940, and subsequently, supercede any statutes, rules of court or decisions contrary thereto. Tit. 7, § 289, Code 1940; Faust v. Paramore, 272 Ala. 19, 127 So.2d 832. Prior to the adoption of the Equity Rules, our broadest interpleader statute was § 10390, Code 1923. That statute became a part of Equity Rule 36, but the second paragraph of that rule is new and obviated the requirement that in interpleader "the same thing, debt, or duty must be claimed" to support the action. Loop National Bank of Mobile v. Cox, 261 Ala. 148, 73 So.2d 364; Creel, "Comment on New Equity Rules," 1 Alabama Lawyer 22, 29; Tilley, Alabama Equity Pleading & Practice, § 139, pp. 158–159.

██ The undisputed evidence shows from the testimony of Stein, the Unit Manager, that he was claiming a pro rata share of the money paid into court in this cause as operating costs. We are convinced that there were two claimants to the fund or part of it—the appellant and the Unit Manager.

██ Appellant argues next that there still was only one claimant because "a position is not a legal entity which can constitute a claimant-litigant in court." He contends that "Unit Manager, Citronelle Unit" is a non-legal entity and is, therefore, not a suable entity. There is authority in this State and elsewhere which supports appellant's contention, but we do not think it is applicable in the instant case. It is true that "Unit Manager, Citronelle Unit" describes a position rather than a person, but this is not erroneous in all situations. In Carlisle v. Peoples Bank, 122 Ala. 446, 26 So. 115, the note and mortgage were made to "The Peoples Bank," and the plaintiff did business in that name as well as his own, W. B. Folmar. The court said, in effect, that if The Peoples Bank and W. B. Folmar were one and the same, that Folmar could sue in the name of The Peoples Bank.

In Milbra v. Sloss-Sheffield Steel & Iron Co., 182 Ala. 622, 62 So. 176, 46 L.R.A., N.S., 274, this court said: "Jurisdiction attaches to persons, to things, to facts, not to mere words, and an error in name is nothing where there is certainty to the thing. * * * A person may adopt what name he pleases, and if he deals with others, or goes to court in a name, no matter what, no harm is done. No one with whom he deals or litigates can complain; hence the rule that the real party directing and controlling litigation may be shown by oral proof."

Here, it was alleged in the amended bill that John E. Stein was the Unit Manager, he was served, filed an answer, appeared through his attorney and in person, and testified as a witness. No objection was made to any of these activities and, while on the witness stand, Stein testified that he was the Unit Manager and the person named in the amended bill.

The interested parties were actually before the court without objection and no reversible error was committed. Tidmore v. Handy, 277 Ala. 20, 166 So.2d 855, and cases there cited.

Appellant next contends that the judgment in his favor in the case at law is

res judicata and "If the stakeholder suffers one of the claimants to take judgment against him, his liability has been adjudicated and he cannot compel the judgment creditor and other claimants of the fund to interplead." First National Bank of Mobile v. Burch, 237 Ala. 680, 188 So. 859.

■ The answer to this contention is that the interpleader action involves different parties, different money, different oil and different issues. The previous action at law was in trover. To support the action of trover the plaintiff must have, at the time of the conversion, the right of property, general or special, and possession or the immediate right of possession. These rights must concur in the plaintiff at the time of the conversion, or the action will not lie. Jordan v. Henderson, 258 Ala. 419, 63 So.2d 379, and cases there cited. In this action of interpleader, *ownership* of the oil was a vital issue.

■ Appellant's next insistence in that "the Unit Manager has no claim for unit operating expenses from runs from unleased mineral acreage." We cannot agree.

It is not disputed that the forty acres, including appellant's .27 acres, was unitized under Tit. 26, Art. 4. The unit operation did not become effective until at least seventy-five per cent of the owners approved in writing the unit operation. Tit. 26, § 179(73).

The last sentence of Tit. 26, § 179(72) (e), provides:

" * * * The expenses chargeable to a tract shall be paid by the person or persons not entitled to share in production free of operating costs, and who, in the absence of unit operation, would be responsible for the expense of developing and operating such tract, and such person or persons' interest in the separately owned tract shall be primarily responsible therefor."

We think this is adequate authority to show appellant's liability for his pro rata share of the expenses of production. It appears that appellant is inconsistent in his demands that he be paid his pro rata share of the oil produced as provided under the statutes, but denies his liability for his share of the expenses as provided by the statutes.

Appellant also contends that "the claim to the stake in interpleader must be by cross-bill," and since the Unit Manager did not file a cross-bill, he was not entitled to relief.

■ We again advert to the second paragraph of Equity Rule 36, this time to the last sentence which reads: "Each claimant shall set forth in his *answer* a concise statement of the material facts upon which he bases his claim." (Emphasis supplied). Also, in Weston v. Weston, 269 Ala. 595, 114 So.2d 898[9], we approved the following statement: "A cross bill would seem to be unnecessary as between the defendants to a bill of interpleader."

■■ Appellant argues that the answer of the Unit Manager was defective in that it did not allege how much of the stake was due him. We think it has already been shown that the amount would vary from month to month and could not possibly have been stated with accuracy. At the trial in September, 1965, the Unit Manager testified that the amount due as of April, 1965, was $51.11, and as of the end of July, it had accumulated to $73.55. Having found two claimants to the stake, the court had the right to mold its decree to fully dispose of the controversy because, in interpleader, "The court shall hear and determine all questions which may arise in the case, * * *." Equity Rule 36.

Having found no reversible error in the matters presented, the decree of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.