227 So.2d 403

**William A. CHAPMAN et al.**

**v.**

**RIVERS CONSTRUCTION COM-
PANY, Inc., et al.**

**6 Div. 420.**

Supreme Court of Alabama.

Sept. 11, 1969.

On Rehearing Motion to Amend Judgment Denied Oct. 9, 1969.

Cato & Hicks, and Percy B. Watkins, Birmingham, for appellants Chapman.

Jenkins, Cole, Callaway & Vance, Birmingham, for Stamper Construction Co.

Warren B. Lightfoot, and Bradley, Arant, Rose & White, Birmingham, for Hughes Construction Co.

COLEMAN, Justice.

Complainants appeal from a decree rendered in a suit which was commenced by a bill of interpleader filed by complainants. They seek a decree distributing $6,000.00 among three respondents. Two respondents filed cross bills seeking additional relief. The court rendered a decree distributing the money and, in addition, awarded to one respondent a judgment for $2,000.00 against complainants and also a lien on certain property of complainants to secure payment of the $2,000.00.

### Bill of Complaint.

Complainants are partners doing business in Jefferson County. They will sometimes be referred to as the owner or as Chapman.

In December, 1965, the owner entered into a contract with the respondent who is hereinafter called Rivers, a corporation, whereby Rivers agreed to erect a steel radio or television antenna tower on Red Mountain in Jefferson County. Chapman had bought the tower in Virginia where it had formerly been used. The disassembled tower had been transported to the erection site. The height of the completed tower was to be approximately 450 feet. When the contract was made, the tower had already been erected to a height of 72

feet. The tower was to be erected on land leased to Chapman.

Chapman agreed to pay Rivers eleven thousand dollars for the work. Chapman avers that, pursuant to the contract, they had paid Rivers $5,000.00 when the erection job was fifty per cent completed, as follows: $3,390.08 paid to Rivers on March 30, 1966, and $1,609.92 paid to A. R. Watson Construction Co., Inc., herein called Watson, on April 6, 1966, at the request of Rivers, to satisfy a writ of garnishment issued in a case in the Civil Court of Jefferson County in which Watson was plaintiff, Rivers was defendant, and Chapman was garnishee. Watson is not a party to the instant suit.

After payment of the $5,000.00 as aforesaid, there remained a balance of $6,000.00 due from Chapman to Rivers. Chapman avers that they have paid the $6,000.00 to the register of the court. Complainants pray that the respondents be required to propound their respective claims to the $6,000.00 and to litigate between themselves their rights to the money, and that complainants be discharged from further liability to respondents.

The second respondent is a corporation herein called Hughes. On March 31, 1966, a writ of garnishment was served on Chapman in another case in the Civil Court in which Hughes is plaintiff, Rivers is defendant, and Chapman is garnishee. It appears that Hughes' claim against Rivers is for the sum of $2,018.27.

Neither Watson nor Hughes had any connection with erection of the tower. They are strangers to the contract entered into between Chapman and Rivers. Watson and Hughes merely seek to collect the respective debts allegedly owed to them by Rivers.

Complainants aver that erection of the tower was completed on or about April 8, 1966.

The third respondent is a corporation herein called Stamper. Stamper is organized under the laws of Indiana. Complainants aver that on March 10, 1966, Stamper entered into a contract with Rivers whereby Stamper agreed to complete erection of the tower and that Stamper did complete erection of the tower on the land leased to complainants. The contract provides for erection to start approximately March 16, 1966, and to be completed in about two weeks.

As we understand the briefs, Stamper began work on March 18, 1966, and completed the job on April 8, 1966. Complainants aver that Rivers had agreed to pay Stamper $8,000.00 for the work, but Rivers has not paid Stamper, and Stamper is or may be entitled to a lien on the leased premises and a claim on the $6,000.00 due from Chapman to Rivers.

### Stamper's Cross Bill.

Stamper filed answer and cross bill in which Stamper claims from Chapman $8,426.00 and avers in substance that in March, 1966, Stamper was engaged in the erection of telephone transmission towers in Alabama for a telephone company; that Rivers, through its president, Willis, contacted Stamper, and:

"6. That pursuant to the solicitations and representations of difficulty made by Rivers Construction Company, Inc. through its president, Aubrey F. Willis, with the knowledge and consent of the cross-respondents, Chapman Communications, a contract was entered into on March 10, 1966 in Oklahoma City, Oklahoma, by which the cross-complainant agreed to provide work and labor for the completion of the erection of said television tower for the sum of Eight Thousand Dollars ($8,000.00) plus certain extra amount for delay in furnishing of material; that the cross-respondent was aware of this contract and of its terms."

Stamper further avers that, on March 30, 1966, with full knowledge of the contract between Rivers and Stamper and that the

television tower was nearing completion and that Stamper had not been paid, without informing Stamper "but rather concealing said fact" and with knowledge that judgments were outstanding against Rivers, Chapman paid to Rivers $3,390.08 and, on April 6, 1966, paid to Watson $1,609.92 on the instruction of Rivers, with knowledge that as a result of said payments there would not be enough money remaining in the hands of Chapman to pay Stamper for its work.

Stamper prays for decree that Chapman is indebted to Stamper in amount of $8,-426.00 for the work and that complainants be required to pay into court the additional sum of $2,426.00.

In its answer, Stamper admits that Stamper has not been paid and has an inchoate statutory lien but denies " . . . . that it is only to the extent of the unpaid balance of Six Thousand Dollars . . . ." and " . . . . denies that Rivers Construction Company, Inc. or R. W. Hughes Construction Co., Inc. are entitled to any monies belonging to respondent."

### Rivers' Cross Bill.

Rivers filed answer and cross bill averring that Stamper is a nonresident corporation not qualified as required by law to do business in Alabama, and praying that the balance of the $6,000.00 paid into court, after deduction of the amount due Hughes, be paid to Rivers.

### Hughes' Answer.

To Chapman's bill of complaint, Hughes answered, averring that it had recovered judgment against Rivers and caused garnishment to issue to Chapman and praying that $1,994.92 be paid to Hughes, plus solicitor's fee.

To the cross bill filed by Rivers, Hughes filed answer to like effect, in substance.

### Stamper's Answer and Cross Bill to Rivers' Cross Bill.

To Rivers' cross bill, Stamper filed answer and cross bill and " . . . . denies that it has no right or entitlement to the funds paid into court . . . . but specifically avers that it is entitled to the funds together with additional funds . . . . and that it is entitled to assert a Mechanic's and Materialman's Lien."

### Stipulation.

The parties stipulated:

(1) That Hughes recovered judgment against Rivers for $1,994.92 plus costs, on February 25, 1966.

(2) That, pursuant to said judgment, garnishment issued requiring Chapman to answer what it was indebted to Rivers at the time of service of the writ of garnishment or time of answer, or what Chapman would owe Rivers by contract existing at the time of service.

(3) Said writ of garnishment was served on Chapman on March 31, 1966.

(4) The amount of Hughes' judgment against Rivers was $1,994.92 plus costs amounting to $23.35.

After taking testimony, the court rendered final decree in substance as follows:

1. Relief to Rivers is denied. Rivers has filed no brief and this ruling is not challenged.

2. Hughes is awarded $2,018.27 of the money deposited in court.

3. Stamper is awarded the balance of the money deposited, $3,981.73, less costs. This ruling is not challenged.

4. Stamper is awarded a judgment for an additional $2,000.00 against Chapman and a lien for the amount of the judgment is established against the real estate, buildings, and improvements thereon de-

scribed in the pleadings. The decree recites:

" . . . . As a basis for this ruling, the Court finds as fact that complainants did induce Stamper Construction Co., Inc., a corporation, to enter into a contract with Rivers Construction Company, Inc., for the erection of the television tower described in the pleadings for the use and benefit of such complainants, and that at the time of making such inducements, said complainants had been served with a writ of garnishment directing them to appear before the Civil Court of Jefferson County in connection with monies that it might then owe to Rivers Construction Company, Inc., a corporation, and that said complainants did not at the time of such inducements reveal the existence or service of such garnishment process to Stamper Construction Co., Inc., as they in good conscience and equity, should have. That as a result of such failure, Stamper Construction Company, Inc., has sustained substantial damage and is entitled to recover judgment against complainants in the sum of $2,000.00 as aforesaid; . . . ."

5. Stamper is awarded a judgment against Rivers for $2,444.27. This ruling is not challenged.

6. All claims for attorney's fees are denied.

Chapman has appealed and Stamper has cross-assigned errors. We will consider the challenged rulings in the order in which they appear in the decree.

### 1. Award to Hughes.

Chapman and Stamper both argue that the court erred in awarding to Hughes $2,018.27 of the $6,000.00 which Chapman paid into court.

In their bill of complaint, Chapman avers that they have paid the $6,000.00 into court and pray that the respondents be required to litigate "between themselves" their rights to the money. Chapman is in the position of a stakeholder who is not claiming a right to any of the stake. It may be questioned whether a stakeholder has a right to object to the decree awarding the money to one respondent instead of another. Stamper, however, is a respondent claiming all of the stake and does have the right to question the correctness of the decree awarding part of the fund to Hughes instead of Stamper. Stamper has cross-assigned as error the award of part of the fund to Hughes and we consider Stamper's cross-assignment No. 1.

Stamper began work on the tower on or about March 18, 1966, and completed the job April 8, 1966.

Hughes' writ of garnishment was served on Chapman on March 31, 1966.

Stamper served notice of its claim on Chapman on April 15, 1966, and filed claim of lien in office of judge of probate on April 26, 1966, as required by statute. Title 33, §§ 42, 46.

As to priority of liens, the case is practically identical with Le Grand v. Hubbard, 216 Ala. 164, 112 So. 826, where the question on appeal was the priority of liens between a garnishing creditor of a contractor and materialmen furnishing material to the contractor for the erection of a building. An admitted balance due from the owner was paid into court. The lien of the garnishment attached prior to the giving of the notice to the owner required of persons furnishing material or labor to the contractor. The trial court decreed that the materialmen had priority over the garnishing creditor with respect to the right to payment from the fund which the owner had paid into court. On appeal, this court affirmed, saying that "Commencement of work on the building . . . . is fixed as the event and the time when third persons are charged with notice that, on compliance with the terms of the statute, liens will accrue against the building in favor of those whose labor

and material bring it into being." (216 Ala. at 165, 166, 112 So. at 828) The court said further:

"That the owner is free to carry out his contract with his contractor and make payments to him, or on his order pursuant thereto, until the statutory notice is given, does not strike out or render nugatory the other provisions giving a potential lien, which, upon notice to the owner, dates back to the commencement of work as against outside liens and incumbrances." (216 Ala. at 167, 112 So. at 829)

In the instant case, when Stamper gave notice to the owner, Stamper's claim to the balance due from the owner to the contractor dated back to the commencement of the work as against outside liens and encumbrances such as Hughes' judgment and garnishment. Until the amount due Stamper, a subcontractor furnishing labor, is paid in full, Hughes, a garnishing creditor of the contractor, has no right to the balance which is due from the owner to the contractor, that is, the $6,000.00 which Chapman paid into court.

Hughes does not question the correctness of the foregoing argument and conclusion, which are supported also by Peavy Lumber Co. v. Murchison, 272 Ala. 251, 130 So.2d 338, and Friday Lumber Co. v. Johnston, 278 Ala. 661, 180 So.2d 259. Hughes does say that, with respect to the $6,000.00, Stamper is not entitled to priority over Hughes for three reasons.

■ First, Hughes says that in its cross-assignment No. 1, Stamper "does not cite any particular ruling of the trial court for this Court to review," and therefore has not complied with Supreme Court Rule 1 which provides that, in assigning error, it shall be sufficient "to state concisely, in writing, in what the error consists." The converse of this provision is, of course, that an assignment is not sufficient where the assignor does not state concisely in what the error consists. In the final decree, on transcript page 235, the court decreed that

Hughes be paid from the money in court its claim to $2,018.27. In cross-assignment No. 1, Stamper says the court erred in ordering in the final decree that the claim of Hughes be allowed and paid from the money deposited in court, and cites page 235 of the record. We think Stamper has sufficiently specified a particular ruling of the trial court for this court to review.

■ Second, Hughes says: "Because the parties raised no point . . . . of priority of liens in the trial court, they cannot now be allowed to insist on a ruling on those questions." We do find that in its answer to the bill of complaint, at transcript page 21, Stamper specifically denies that Chapman's obligation to Stamper "is limited to Six Thousand Dollars ($6,000.00) and denies that (Rivers) . . . . or . . . . (Hughes) . . . . are entitled to any monies belonging to respondent." In the light of Stamper's claim to more than $6,000.00 and Stamper's denial of Hughes' right to any money belonging to Stamper, we think the record shows that Stamper did claim priority over Hughes as to the fund in court.

Third, Hughes says Stamper's claim cannot take priority over Hughes' lien because Stamper was and is a foreign corporation not qualified to do business in Alabama and the issue whether Stamper was qualified in this state was raised at the trial level, and testimony was given by the president of Stamper showing that Stamper was not qualified, as follows:

"Q (BY MR. HENDON:) Has your company ever been qualified to do business in the State of Alabama?

"MR. JENKINS: We object to that. The same objection; not the best evidence and not the proper way to prove it.

"THE COURT: I will overrule. I will let him state what he thinks about it. It is a legal conclusion. It is a conclusion I am going to have to draw from all the evidence. I will hear what he has got to say about it.

"THE WITNESS: Will you repeat the question?

"Q (BY MR. HENDON:) Is your company, Stamper Construction Company, qualified to do business in Alabama?

"MR. JENKINS: I would like to add another objection before he answers that question. It is not shown this witness has knowledge as to what qualifies him to do business.

"THE COURT: As I have stated, that is a legal conclusion. It is an invasion of the province of the Court. I am going to permit him to answer. When I permit him to answer it, I am also going to permit you gentlemen to cross-interrogate him as to his qualifications.

"A I will put it this way: To my knowledge, I would have to have subcontractors licensed in the State of Alabama. I was under that impression.

"Q (BY MR. HENDON:) You were under the impression you did not have to be qualified to do this job?

"A Right.

"Q It was on that assumption you did this job?

"A Correct."

■ Stamper responds to Hughes' argument by saying in brief that, although Rivers did, by answer and cross bill, aver that Stamper was a foreign corporation not qualified to do business in Alabama, "There is no . . . . allegation in the record, filed by . . . . Hughes . . . . asserting that Stamper's claim should be denied because they were not qualified to do business in Alabama. There is no proof or evidence in the record to this effect either." We think Stamper is correct in saying that Hughes filed no pleading asserting that Stamper's claim should be denied because it was not qualified in this state.

In a suit to foreclose a mortgage, the court held the bill of complaint not demurrable for failure to show that the complainant foreign corporation was qualified to do business in Alabama. The court said:

" . . . . Unless the disability of the plaintiff to maintain the bill is apparent upon the face of the bill, it is not the subject of a demurrer, but of a plea. Story, Eq.Pl., §§ 493, 494, 722." Nelms v. Edinburg-American Land Mortgage Co., 92 Ala. 157, 162, 9 So. 141, 143.

In subsequent cases, the court said:

" . . . . If the incapacity to sue, arising from infancy or other cause, does not appear, however, on the face of the bill, the defendant must take advantage of it by plea; but, if the incapacity appears on the face of it, he may demur. [Story Eq.Pl.] §§ 493, 494, 722; Nelms v. [Edinburg-American L.] Mortgage Co., 92 Ala. 162, 9 South. 141. . . . . . " Liddell & Co. v. Carson et al., 122 Ala. 518, 528, 26 So. 133, 136.

"3. It will be presumed that a foreign corporation doing business in this state has complied with its laws. Nelms v. [Edinburg-American] L. M. Co., 92 Ala. 157, 9 South. 141. The bill here shows nothing to the contrary. . . . . Certainly strangers cannot raise the question in any case." Western Union Telegraph Co. v. Louisville & N. R. Co., 202 Ala. 542, 548, 81 So. 44, 50.

Because Hughes did not raise the issue of Stamper's lack of qualification by affirmative pleading, Hughes cannot raise the issue on appeal.

We are not to be understood as holding that, even if Hughes had affirmatively pleaded Stamper's lack of qualification, the proof in the instant case would be sufficient to require or permit the trial court or this court to find that Stamper was not qualified.

Accordingly, we hold that the court erred in ordering that Hughes be paid $2,018.27 out of the $6,000.00 paid into court.

### 2. Stamper's judgment against Chapman.

Chapman asserts that the court erred in awarding Stamper a judgment against Chapman for $2,000.00 in addition to the $6,000.00 which Chapman had paid into court.

Stamper asserts that the court erred in limiting Stamper's additional judgment against Chapman to $2,000.00 because Rivers is insolvent and the judgment awarded to Stamper against Rivers for $2,444.27 is worthless. Stamper says the total amount due it for its work under its contract with Rivers is $8,426.00, which the court found to be the amount due; that Stamper is awarded only $3,981.73 out of the fund in court ($6,000.00 less the $2,018.27 awarded to Hughes); and that Stamper's additional judgment against Chapman for only $2,-000.00 ought to be $4,444.27 ($8,426.00 less $3,981.73), so as to make Stamper whole.

We must first decide whether Stamper is entitled to recover any judgment against Chapman in addition to the $6,000.00 paid into court.

Title 7, § 109, Code 1940, recites:

"Suppression of a material fact, which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case."

§ 109 is declaratory of the common law. In dealings between persons standing in confidential relations, the law imposes an obligation on one party to safeguard the interests of the other party with the same fidelity with which he safeguards his own. Withholding facts, material to be known, is a breach of such legal duty, regardless of intent to deceive, and is a legal fraud. When the circumstances of the particular case impose a like duty, the same rule obtains. So reads the statute. In the absence of confidential relations, or special circumstances imposing a like duty, the rule seems settled that nondisclosure of facts to be fraudulent must be for purposes of deceit. Metropolitan Life Ins. Co. v. James, 238 Ala. 337, 341 [1, 2] [3], 191 So. 352.

No confidential relation existed between Chapman and Stamper. Any legal obligation on Chapman, to disclose to Stamper the fact that Chapman had been served with a garnishment founded on Watson's judgment against Rivers, must arise from the particular circumstances of this case. The question for decision is whether the evidence supports a finding that such legal duty did arise from such circumstances.

If Rivers and Stamper had entered into their contract without consultation with Chapman, and Chapman had not had any communication or contact with Stamper, directly or indirectly, Chapman certainly would not owe any duty to seek Stamper out and tell him of the existence of Watson's judgment against Rivers or of the garnishment. The court could find from the evidence, however, that Chapman did have communication and contact with Stamper.

William Chapman, one of the partners, testified that "Possibly" he had actually received the first garnishment before Stamper "ever came on the job." The record shows the sheriff's return which recites that Watson's garnishment writ was served on the other partner, George Chapman, on February 18, 1966.

William Chapman testified that: "Any garnishment whatsoever sets up a signal in my brain."

Horace Thacker, business agent of Iron Workers Local Union No. 92, testified that he had a conversation on the telephone with George Chapman who told Thacker of the attempts to erect the tower; that George Chapman " . . . . was seeking help in getting it erected . . . . "; that Thacker visited the tower site; that Thacker did inform Cecil Stamper, president of Stamper, the corporation, that " . . . . there was a tower to be erected in Birmingham that we had been having

trouble with, and if he would go and check with Mr. Chapman I felt sure he might get the job."

George Chapman testified that the first time he saw Cecil Stamper was around the middle of March, that he met Cecil Stamper on Red Mountain, and further:

"Q What conversation was had there by you, by Mr. Stamper or by Mr. Willis in your presence, as you recall it?

"A I was talking to Mr. Stamper, I believe, before Mr. Willis came down— we were kind of at the bottom of the hill. I believe I was talking to Mr. Stamper. We were discussing the situation. Mr. Stamper said he could put the tower up. I don't believe at that time I discussed any price or anything with Mr. Stamper. I think that he, in turn, had talked to Mr. Willis, I believe the same day, the best I remember. I was on the way down the hill, and Mr. Stamper—we stopped right after going out of the site, out of sight of their vision, and I believe he said what it would cost. I don't remember the figure. I believe it was around seven or eight thousand dollars. I explained that I had a contract with Mr. Willis and unless I could get out of it I would not be able to do it.

"Q Did you tell him you were dissatisfied with the way Mr. Willis was doing the job?

"A Yes. I think I told him that when he was up there.

". . . . . . . . .

"Q. Actually, Mr. Chapman, you had been served with a writ of garnishment directing you to pay any money you might have up to a certain amount due by you to Mr. Willis or to the Rivers Construction into court before you ever saw Mr. Stamper, had you not?

"A I believe the first garnishment was in. I don't recall about the second one. It might have been, from your dates.

"Q Before you had met Mr. Stamper up there at the site of the tower?

"A I am not positive of that."

Cecil Stamper testified that in late February or early March, he was informed of the Chapman job by Thacker, who asked Stamper to come down and look at the tower and see what he could do; that Stamper did come to Birmingham and had met Willis and Chapman on top of the mountain and had then come down the mountain some distance and there had a conversation with George Chapman. Stamper testified:

"Q Tell us what conversation you had with him at that point?

"A At the time before we came down the hill I think I made the statement I really was not interested in doing the work. Like I said, he asked about approximately what length of time it would take to do the job. Then there was, I think, one time that Willis mentioned approximately what would be the cost. I hold him I didn't know, I would have to figure that out. So, when we got down to the bottom of the hill Mr. Chapman asked me the same thing, roughly, what it would take to finish erecting the tower. I told him in the neighborhood of, just a rough estimate, from seven to nine thousand dollars, I would have to figure the man hours on it. 'Well,' he says, 'I have got myself in trouble.' He says, 'I have a contract with Willis. I can't run him off the job. He doesn't have a completion date on it, but,' he says, 'If he doesn't do something in the next two or three days maybe there is some way you and him can get together and maybe we can work something out on it.' I told him, 'Fine.' That was about the extent of the conversation then."

A few days later, Stamper entered into the contract with Rivers to construct the tower.

We are not advised of any decision by any court involving the circumstances of the instant case. In a treatise by an eminent writer we find the following:

"In general mere silence, a mere failure to apprise the party with whom one is dealing of facts important for him to know for the protection of his own interest in the particular transaction, is no fraud. *Caveat emptor* is the motto of commercial law, and in other dealings, as well as in sales, every person is expected to look after his own interest, and is not at liberty to rely upon the other party to protect him against the consequences of his own blunders or heedlessness. Therefore, where the sources of information are equally open to both parties to any dealings, and the one obtains an advantage of the other without resort to any trick or artifice of concealment calculated to throw the other off his guard, or to any false presentation of facts, the advantage he gains is deemed legitimate, and the losing party must bear such loss as has resulted from his own want of vigilance or prudence. Nor is this the rule as regards merely the quality or value of that which is the subject of negotiation, but it extends to all those facts and circumstances which would be likely to influence the minds of the contracting party if they were known to him when the contract was entered into. Therefore, if one who is insolvent buys goods of another without disclosing his circumstances to his vendor, who is ignorant of them, but makes no inquiries, and is not deceived by misrepresentation or artifice, there is in law no fraud, although the vendor when he sold, fully believed the vendee to be responsible and entitled to credit. But there is a strong dissent from this doctrine which is ably expressed by the Supreme Court of Alabama as follows: 'One who comes to buy goods on credit impliedly represents that he is or will be able to pay for them, and that he intends to pay for them, and he impliedly promises to pay for them; and he knows that the seller parts with them on the faith of these implied representations and this implied promise. If in fact he intends not to pay for them, or if he has no reasonable expectation of paying for them, and is insolvent or in failing circumstances, so that payment cannot be coerced, he deceives the seller and practices a fraud upon him in the very act of purchasing his property. The purchase itself being a representation that the buyer intends to pay the price, to so represent or profess by the act of purchasing, when in truth he intends to do the contrary, "is as clear a cases of misrepresentation and of fraud as could be made." Obviously there need be no misrepresentation by word of mouth, and no affirmative concealment, so to speak, of the purchaser's insolvent condition, or of his intention not to pay, or of his want of reasonable expectation of being able to pay. If these facts exist, *and are not disclosed*, the seller, proceeding, and known by the purchaser to be proceeding, on the assumption of their nonexistence, or, in other words, on the assumption that the purchaser is solvent and intends and reasonably expects to pay, is deceived and defrauded. . . . .' " Cooley on Torts, Vol. 2, at pages 556, 557, and 558.

Cooley cites Maxwell v. Brown Shoe Co., 114 Ala. 304, 308, 309, 21 So. 1009, and other Alabama cases.

In the instant case, we think the evidence supports the court's finding that Chapman induced Stamper to enter into the contract with Rivers; that, prior to the making of such contract and at the time George Chapman talked with Cecil Stamper, Chapman had knowledge of the Watson judgment against Rivers and the ensuing garnishment writ; that the fact of service of that writ was a fact material to be known by Stamper; that Chapman had superior knowledge of the fact that the garnishment had been served on Chapman; and that Chapman owed a duty to Stamper to in-

form Stamper of the existence of the judgment and garnishment.

We do not think it necessary to find that Chapman was guilty of actual intent to defraud. Chapman, was however, in the position of having superior knowledge. Chapman did tell Stamper that Chapman had a contract with Rivers, and Chapman did suggest that " '. . . . maybe there is some way you (Stamper) and him (Rivers) can get together and maybe we can work something out on it.' " Having affirmed the existence of the contract with Rivers; and, having knowledge that Rivers' right to collect on the contract and Stamper's derivative right as subcontractor to collect on the contract, might be impaired or diminished by the Watson judgment, Chapman was under obligation to communicate to Stamper the fact of the existence of the Watson judgment because Chapman induced Stamper to rely on Chapman's contract with Rivers and knew that Stamper was relying on the contract.

The result of our holding is that Stamper is entitled to the entire $6,000.00 fund, less costs in the trial court. The taxation of the costs in the trial court against the fund is not assigned for error and will stand.

The court found that Stamper was due $8,426.00. This finding is not contested. When Stamper receives the $6,000.00, Stamper will still be entitled to an additional $2,426.00 under the following rule:

" . . . . For there is another well-settled rule pertaining to the measure of damages resulting from fraudulent conduct or representations, to the effect that such damages will be fixed by an amount which would place the defrauded person in the position he would occupy if the representations had been true. . . . . " Fogleman v. National Surety Co., 222 Ala. 265, 268, 132 So. 317, 320.

We hold that Stamper's judgment against Chapman should be for $2,426.00, instead of $2,000.00.

The judgment in favor of Stamper against Rivers should be $2,426.00 and should remain in full force and effect for that amount. Stamper is entitled, however, to only one recovery of the $2,426.00. Rivers is primarily liable for that amount. Any amount collected from Rivers ought to be credited to Chapman so as to reduce Stamper's $2,426.00 judgment against Chapman by the amount, if any, that is collected from Rivers.

### 3. Stamper's lien.

■ The trial court "established" a lien against the real estate, buildings, and improvements, described in the pleadings, for the amount of the additional judgment in favor of Stamper against Chapman.

It is not disputed that the land on which the tower was erected is owned by a person or persons, who are not parties to this suit and who leased the land to Chapman. Chapman asserts that the court erred in awarding the lien because the lessor is not a party to the suit.

Stamper says that Chapman, " '. . . . being the lessee for a period of twenty-five years from 1962, was and is for all practical purposes the owner of the property."

We do not agree with Stamper's argument. Title 33, §§ 39, 40, Code 1940, (§§ 4756, 4757 of Code 1907), provide for a mechanics' lien on leased land. This court has said:

" . . . . When the lien is sought to be established on the building or the building and leasehold interest, where the relation of lessor and lessee exists, under section 4756, the lessor is a necessary party. If the lien is established under section 4756 of the Code of 1907, then section 4757 permits him to pay off and discharge the lien before a sale of the property. (Citations Omitted)" Taylor v. McGill, 205 Ala. 458, 460, 88 So. 564, 565.

Because the lessor is not a party to the instant suit, the lien "established" by the trial court is due to be discharged

### 4. Attorney's fee.

■ Chapman asserts that the court erred in not awarding to Chapman an attorney's fee to be paid out of the $6,000.00 paid into court.

Equity Rule 36 provides that, in interpleader suits, the court "may" allow to one or more of the parties a reasonable sum for counsel fees payable out of the fund or property.

This court has said that the chancellor is invested with a discretion in this regard. Jennings v. Jennings, 250 Ala. 130, 133, 134, 33 So.2d 251; Loop National Bank of Mobile v. Cox, 261 Ala. 148, 153, 73 So.2d 364. We do not think the trial court abused its discretion in denying attorney's fees in the instant case.

The decree is affirmed in part, reversed in part, and remanded with directions that the trial court enter a decree in conformity with this opinion.

Costs of appeal are taxed equally against Hughes, Stamper, and Chapman.

Affirmed in part, reversed in part, and remanded with directions.

LIVINGSTON, C. J., and SIMPSON and BLOODWORTH, JJ., concur.

## ON REHEARING

*Motion for Ten per cent damages.*

Subsequent to original deliverance, Stamper has filed a motion asking that the judgment of this court be amended so as to include the ten per cent award of damages as required by § 814, Title 7, Code 1940, as amended, which, in pertinent part recites:

"When a judgment or decree is rendered for money, whether debt or damages, and the same has been superseded on appeal by the execution of bond, with surety, if the appellate court affirms the judgment of the court below, it must also render judgment against all or any of the obligors on the bond, for the amount of the affirmed judgment, ten percent damages thereon, and the costs of the appellate court; . . . . "

■ Stamper says that it was awarded a money decree for $2,000.00 by the trial court and that, on appeal, the money decree was not only affirmed but the amount thereof was increased; and, therefore, Stamper, as an appellee, is entitled to 10% damages in addition to the amount of the money decree.

The rule for determining when an appellee is entitled to the 10% penalty has been stated as follows:

" . . . . The conditions are (1) a moneyed judgment or decree; (2) that it is superseded on appeal by bond; (3) and an affirmance of that judgment on appeal. The only province of this court is to determine whether those conditions exist. When so, we have no discretion.

"If there is a situation in which doubt exists as to the existence of any of them, so that an interpretation is necessary, we may consider the purpose of the statute to aid us in so doing. For that reason, in the case of Montgomery Light & Water Power Co. v. Thombs, supra (204 Ala. 678, 87 So. 205), its purpose was mentioned as an aid to construction. In line with that purpose, it has been uniformly held that the judgment or decree must be affirmed in fact and not merely in form. New York Life Ins. Co. v. Reese, 201 Ala. 673, 79 So. 245; United States Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520; Western Union Tel. Co. v. Bashinsky, Case & Co., 217 Ala. 661, 117 So. 289; Alabama Great Southern R. R. Co. v. Norrell, 225 Ala. 503, 143 So. 904.

**645**

"Those cases settle the question that those damages are not applicable, when, on the appeal by a defendant in a moneyed judgment, there is a substantial change in the amount or terms of judgment, as respects appellant." Snellings v. Builders' Supply Co., 229 Ala. 1, 155 So. 858.

See also: Louisville & Nashville R. Co. v. Parker, 223 Ala. 626, 647, 138 So. 231 [49]; Louisville & Nashville R. Co. v. Grizzard, 238 Ala. 49, 62, 189 So. 203 [27].

In the cited cases, supra, this court has consistently held that the appellee is not entitled to the 10% penalty when the amount of the judgment is reduced by the appellate court and the judgment is affirmed on condition that appellee agree to remit all of the judgment in excess of the amount to which it is reduced by the appellate court.

Referring to § 2893, Code 1907, (§ 814, Title 7), this court has said:

" . . . . This statute (section 2893) was evidently intended to penalize frivolous or delay appeals and did not contemplate that an appellant would be penalized on account of the mere form of the judgment as last rendered by this court, notwithstanding there was a substantial change or alteration of the judgment in his favor. . . . . " Montgomery Light & Water Power Co. v. Thombs, 204 Ala. 678, 684, 87 So. 205, 211.

In the instant case, the amount of the money decree is not reduced on appeal. In that respect, "the terms of the judgment" on appeal are not favorable to appellant.

The trial court, however, awarded to Stamper a lien to secure the money decree. The judgment on appeal reversed in that respect and discharged the lien. In that respect, " . . . . there was a substantial change or alteration of the judgment . . . . " in favor of appellant. Be-

cause there was such a change in the decree, we are of opinion that Stamper is not entitled to an award of the 10% penalty.

Motion denied.

LIVINGSTON, C. J., and SIMPSON, BLOODWORTH, and MADDOX, JJ., concur.