ALMON, Justice.
Fred L. Shoemaker appeals from a judgment on a jury verdict awarding Robert W. Smith II $20,930.02 actual damages and $500,000 punitive damages. Prior to July 1, 1985, Smith’s mother, doing business as Smith Print and Copy Center, performed substantial amounts of printing work for Shoemaker. On that date, Smith acquired his mother’s interest in the business, including the accounts receivable. Smith performed further services for Shoemaker thereafter. Shoemaker made representations during the relationship that the jury found to be fraudulent.
Shoemaker’s brief purports to state 12 issues for review, but most of those “issues” do not in fact state a cognizable issue for review, and the arguments in support thereof frequently do not make references to the record or cite any authority for any pertinent propositions of law.
For example, one “issue” is whether the trial court erred in admitting plaintiff’s exhibits 1-43, on the ground that “the documents were known to be those of a party not before the court [i.e., the business in the hands of Mrs. Smith before she sold it to her son] and many fabricated just to present in this case.” The trial court resolved a similar argument on motion for new trial thusly:
“As to Defendant’s objections concerning Plaintiff’s trial exhibits, the record will reflect that most of these exhibits were entered without objection by Defendant, so any objection would be waived. The Court totally rejects Defendant’s assertion that any documents admitted into evidence were forgeries. Plaintiff’s exhibits were copies and examples of printing work done for Defendant by the Plaintiff, and which formed the basis of this lawsuit. To characterize these as forgeries borders on the absurd.”
Another “issue” regards the failure to give any of the defendant’s written requested jury instructions. Here is the defendant’s objection to the jury charge:
“The defendant objects to the refusal by the Court to give the proper jury charges in this case. Those counts [sic] are as shown by the Court as refused. And that’s all.”
This is insufficient under Rule 51, Ala. R.Civ.P., to preserve any issue for review. American Fire & Cas. Ins. Co. v. Archie, 409 So.2d 854, 857 (Ala.Civ.App.1981).
To the extent that Shoemaker has presented any issues at all, they are prem *173 ised largely on the contention that Smith does not have standing to sue because most of the work was done when the business was owned by Mrs. Smith.[1] The sale to Smith of the business, including the accounts receivable, was shown by a copy of a sale contract introduced into evidence. That sale effected an assignment of Mrs. Smith’s rights against Shoemaker and made Smith the proper party to bring the claims as to the damages arising both before and after the sale. See, e.g., Alabama Terminix Co. v. Howell, 276 Ala. 59, 158 So.2d 915 (1963); Loop Nat’l Bank of Mobile v. Cox, 261 Ala. 148, 73 So.2d 364 (1954).
Shoemaker also attempts to argue that the contract was not enforceable because it was not in writing, citing Ala.Code 1975, §§ 8-9-2 and 7-2-201. “Under [§ 7-2-201], no writing is required with respect to goods which have been received or accepted.” Fendley v. Dozier Hardware Co., 449 So.2d 1236, 1239 (Ala.1984). Shoemaker accepted hundreds of thousands of forms and envelopes printed by Smith Print and Copy Center. We see no error here.
Other portions of Shoemaker’s brief assert that in his dealings with Smith he was acting solely as an officer of a corporation. There was sufficient evidence for the jury to find that Shoemaker was acting as the alter ego of the alleged corporation. See, e.g., Huntsville Aviation Corp. v. Ford, 577 So.2d 1281 (Ala.1991).
It is not clear that any of the appellant’s “issues” raises questions regarding whether the damages were excessive. Even so, the trial court, in its order denying Shoemaker’s motion for new trial, made proper findings that the verdict was not excessive or the result of bias, passion, prejudice, or other improper motive. There was evidence that the contract was for two million forms and four million envelopes, for $85,876. Fewer than that many were printed, but Smith also did other work for Shoemaker during the relationship. The jury could have found that the contract contemplated that Shoemaker would not pay the initial invoices immediately because his business would not have any cash flow initially. The misrepresentations that the jury could have found included a promise to pay Smith a $50,000 bonus if he continued to perform printing services after the account was seriously delinquent. Other misrepresentations related to the financial backing and the prospects of Shoemaker’s business, including an allegedly false balance sheet. Pertinent to the culpability of Shoemaker’s conduct is his continued insistence that the Smiths agreed to do the printing work without charge for six months. We do not necessarily hold that these facts are sufficient to justify the $500,000 punitive damages award; rather, we simply hold that, in light of the ineffective attempt to present any issue for review, we do not see on the face of the matters presented in the briefs, the complaint, the answer, the judgment, and the other portions of the record that we have reviewed, any suggestions that the award is so grossly excessive as to justify our searching the record for a basis on which to reduce the judgment.
As a final matter, we note that the appellant’s attacks on the trial judge are highly inappropriate and entirely unsubstantiated.
AFFIRMED.
HORNSBY, C.J., and ADAMS and INGRAM, JJ., concur.
STEAGALL, J., concurs in the result.

. Shoemaker also attempts to make an issue of a change in the name of the business from "Smith Print and Copy Center” to "Smith Print and Copy.” This is immaterial.