[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 912 
This appeal follows a decree entered by the Circuit Court of Coffee County divorcing the parties on the basis of incompatibility of temperament. Appellant-husband contends that the trial court committed reversible error when it ordered him: (1) to continue to pay child support "until further orders of the [trial court;" (2) to pay an excessive amount of alimony; and (3) to pay his wife's attorney's fees. In addition, the husband argues that Title 30, chapter 2, section 51, Code of Alabama 1975 is unconstitutional in that it permits an award of alimony solely to a wife. And finally, the husband claims that General Motors Corporation was improperly joined as a party to the divorce proceeding below.
The record before this court reveals that the parties had been married approximately twenty-three years when they were divorced. Their union produced three children, two of whom were adults at the time the marriage was dissolved. The couple's eldest daughter is a college graduate and no longer resides at the family home. The middle child, a daughter, attends school at Auburn University but is still dependent upon her mother and father for at least a portion of her financial support. The parties also have a son who is their youngest child. He was a high school sophomore at the time of the divorce.
Both the husband and wife are in their mid-fifties. Although the husband is in good health, the wife has had problems with her back and has undergone two operations to correct this condition. Other than recurring difficulties with her back, she is in reasonably good health.
The husband is owner and operator of Ray Hughes Chevrolet, Inc., an automobile dealership located in Enterprise, Alabama. On the other hand, the wife is a homemaker and has not been employed in a position outside the home since the early years of the couple's marriage.
Evidence presented at trial disclosed that during the latter years of the parties' marital union, the husband engaged in a marked tendency to disassociate himself from his family — often refusing to eat or converse with his wife or children. Testimony further revealed that the husband and wife frequently argued over finances and his refusal to inform her about the family's financial condition. Finally, the trial transcript indicates that when the husband did engage in conversations with the members of his family it was generally for the purpose of harangueing or criticizing them. It was on the basis of the aforementioned circumstances that the wife ultimately decided to obtain a divorce.
In December of 1974 the wife filed a complaint seeking a divorce from her husband. After the occurrence of various procedural stages dealing with this matter, a hearing was held in the Circuit Court of Coffee County and on October 6, 1976 a decree of divorce was ordered. This judgment was based on the finding by the court that there existed such a complete incompatibility of temperament that the parties could no longer live together. In its decree of October 6, the court ordered that the wife be granted custody of the couple's minor son; that the husband pay $300 a month child support until his son graduated from college; that he pay his son's medical expenses; and that the husband pay the wife alimony in gross in the amount of *Page 913 
$10,000 per year (or $833.33 a month) for ten years. Moreover, the wife and son were granted the use of the family residence until further order of the court and the husband was required to pay the mortgage, taxes and insurance on this residence. A general lien was declared on all of the husband's property, including his Chevrolet dealership, and he was precluded from disposing of any stock in the dealership which belonged to him (unless the proceeds therefrom were used to pay alimony or child support) until he had paid the $100,000 in alimony payments due his wife. The husband was also ordered to pay the attorney's fees incurred by the wife.
On April 27, 1977 the trial court overruled the husband's motion for new trial, withdrew its original judgment of October 6, 1976, and entered a second judgment. Despite retaining a substantial portion of the language in its original decree, the court made the following modifications: (1) $300 a month to be paid by the husband as child support for his minor son "until further order of the court;" (2) the family residence to be sold when the minor child reached the age of majority — with one-third of the proceeds from the sale to the wife and the remaining two-thirds of the proceeds to the husband. The husband was also ordered to maintain complete medical insurance on his wife and the award of attorney's fees to the wife's counsel was raised from $3,500 to $4,500. From the trial court's second judgment the husband brings this appeal.
The first issue presented to this court for review concerns the husband's assertion that the trial court abused its discretion in requiring that he pay child support until further order of the trial court. He contends that his motion for new trial challenged the court's original decree ordering him to pay child support until his son graduated from college on the basis that such an order would mandate that child support payments continue even after the child reached the age of majority. Consequently, the husband submits that the court's subsequent modification of the language in its original judgment is merely an effort to circumvent the court's obligation to declare that the husband is not required to pay child support once his son reaches the age of nineteen.
Since there is no legal obligation of a parent to support, maintain or educate a child once that child reaches the age of nineteen, the court in the instant case did not err in changing its original language ordering the husband to pay child support from "while said child successfully continues his education in college" to "until further orders of the court." Indeed, the latter language is merely an indication that the court has retained jurisdiction to modify the requirement that the husband pay child support. And any such modification may in fact occur before the child reaches the age of nineteen. At any rate, the court may properly retain such jurisdiction at its discretion and it will not be reversed on appeal for doing so unless the complaining party demonstrates a clear, manifest and obvious abuse of its discretion by the trial court. We find no such abuse in the judgment below as it relates to the trial court's order regarding child support.
However, it should be noted that in the cases of Hardiman v.Hardiman, 48 Ala. App. 427, 265 So.2d 607 (1972) and Huckaba v.Huckaba, Ala.Civ.App., 336 So.2d 1363 (1976), this court said that a trial court has no power to order a husband to continue to pay child support once his child reaches adulthood.
The next issue raised by the husband concerns the amount of alimony awarded to the wife by the trial court. While the husband does not contest his obligation to pay his wife an equitable amount of alimony, it is his contention that the trial court abused its discretion in ordering him to pay the sum of $833.33 a month in alimony and an additional $645.50 per month in child support, mortgage payments, property taxes and insurance on the family residence. The husband urges that these payments alone (totaling $1,478.83 per month) exceed his monthly income, and that when coupled with his obligation to provide medical care *Page 914 
and insurance for his wife and son, the monthly amount he is required to pay for their support will force him to borrow money to meet his own living expenses.[1]
In determining whether the trial court abused its discretion in awarding alimony we must examine the evidence presented to that court. The evidence which was introduced to this matter in the trial below reveals the following facts. The parties' home was built for $55,000 and has a current market value of $75,000. The wife testified that she wished to remain in the house until the couple's son graduated from high school. Accordingly, the trial court ordered that the house be sold when the latter reaches the age of nineteen, at which time the husband will receive two-thirds of the proceeds from the sale and the wife will be paid the remaining one-third of the proceeds.
The joint income tax returns for the husband and wife indicate that between 1969 and 1972 their taxable income was between $40,000 to $52,000 a year. This entire amount was earned as a result of the husband's automobile business — either in the form of salary or stock dividends. In 1973 the husband began to file individual income tax returns and his return for that year shows a taxable income of $43,500. In 1974 his taxable income amounted to $43,250. However, due in part to the ravages of a nationwide recession which had a particularly bad effect on the nation's automobile industry, the husband's taxable income fell to $24,400 in 1975.[2] Despite this fact, the net worth of his automobile dealership rose to an all-time high and in 1975 it had an estimated value of $378,453. This increase in the value of his business was apparently the result of the husband's use of the profits from his business to acquire from General Motors whatever stock the latter owned in the husband's Chevrolet dealership. The dealership's profits were also used by the husband to purchase stock in General Motors.
The husband is the sole owner of his automobile dealership and in his capacity as the president of his wholly-owned corporation he may fix his personal salary at whatever amount he desires.
At trial he testified that he reduced his monthly salary in 1976 because of the general decline in automobile sales which occurred in 1975. Nonetheless, undisputed testimony at trial established that the husband received a monthly take-home pay of approximately $1,266 in 1976. In addition, he received annual dividends from his stock in General Motors and the yearly amount produced as a result of this stock was between $1,000 and $2,450. Thus, at the time of the divorce the husband was earning approximately $16,000 to $18,000 a year. He testified that his living expenses were approximately $600 per month.
And in view of these facts, the husband argues that the trial court ordered him to pay alimony, child support and other expenses for the benefit of his wife and son which amounted to approximately $17,750 a year and that the trial court abused its discretion by awarding such an amount.
While we would not disagree with an assertion that the trial court's award was rather generous in view of the husband's earnings at the time of the divorce, we do not believe that the award was so excessive that it constitutes an abuse of the court's discretion. *Page 915 
Both the husband's General Motors stock and his automobile dealership are income producing. And the latter has demonstrated its ability in the past to provide the husband (and his family) with a comfortable standard of living. Nor is there any reason to believe that the future of the husband's automobile dealership is so bleak that it will not continue to provide him with sufficient income to meet his alimony and child support obligations while at the same time furnishing him with an adequate amount of money to live on. Indeed, the husband testified during the trial that his business was improving, and given the general upswing in the nation's economy it would be remarkable for this court to conclude that the business of his automobile dealership will not continue to increase. In brief, there is nothing in the record to indicate that his income will remain at its 1975-1976 level.
Moreover, the General Motors stock retained by the husband is marketable and according to the court's decree it may be borrowed against or sold for the purpose of meeting alimony and child support payments. This stock is currently valued at $25,500 and its value will probably increase in the future.
In addition, the husband's obligation to pay his wife child support will end on his son's nineteenth birthday in March of 1978. The termination of this responsibility will reduce the husband's payments to his wife by some $3,600 a year. Likewise, upon his son's nineteenth birthday the parties' home may be sold and the husband is entitled to two-thirds of the proceeds from the sale of this property which is currently valued at $75,000. And as the enumeration of these facts demonstrates, the husband has a number of assets and means of meeting his duties under the judgment for divorce which was rendered by the trial court.
On the other hand, the wife has neither the assets nor a separate estate to support her son and herself. She testified that the two of them have living expenses of between $600 to $1,000 per month. In addition, the wife stated that she would like to contribute some financial support to her middle daughter's college education.
The wife has performed the functions of homemaker since the early years of the couple's marriage, making every effort to be frugal and economical in meeting various household expenses; and although she has held secretarial type jobs in the past, she has not worked in such a capacity in a number of years. Moreover, her health and difficulties with her back may prevent her from obtaining any substantial employment in the future. Thus, it is apparent that the husband is the only one of the two parties who is in any financial position to provide the support necessary for the subsistence of his wife and minor son.
The trial court in granting a divorce has the authority to award to the wife alimony in gross. And in determining the amount of the award the trial court may exercise its discretion. Davis v. Davis, 274 Ala. 277, 147 So.2d 828 (1962). In reaching its decision on the size of the award the court may consider the circumstances of the particular case along with a number of other relevant factors. Among these factors are: the parties' future prospects; the parties' standard of living during their marriage and their potential for maintaining or exceeding that standard after their divorce; their ages, sex and health; the length of their marriage; the source (or sources) of their common property; and in appropriate situations, the conduct of the parties with reference to the cause of divorce. Sides v. Sides, 284 Ala. 39, 221 So.2d 677
(1969); Brooke v. Brooke, 57 Ala. App. 704, 331 So.2d 715
(1976).
Furthermore, it is a well established principle that this court will review a judgment by a trial court in divorce cases with a presumption of correctness in any situation where that court has heard the testimony and viewed the witnesses. Meyersv. Meyers, 55 Ala. App. 697, 318 So.2d 725 (1975). The rationale for this rule — commonly called the ore tenus rule — is this court's awareness of the fact that the trial court is in a better position to make decisions regarding awards of alimony and child support *Page 916 
than an appellate court. Accordingly, we will not reverse a trial court's determination in such matters unless the complaining party demonstrates from the record before this court that the trial court palpably abused its discretion. And, in this instance, we are not prepared to hold that the judgment rendered by the trial court was palpably in error. Novak v.Novak, Ala.Civ.App., 339 So.2d 77 (1976).
The third issue presented for examination by this court involves the husband's argument that (1) the trial court abused its discretion by requiring the husband to pay the attorney's fees of his wife, and that (2) the amount of attorney's fees actually awarded was excessive. However, we cannot agree with either of these contentions.
An award of attorney's fees to the wife in a divorce case is a matter within the sound discretion of the trial court and that court will not be reversed on appeal for the exercise of its discretion unless the award is plainly erroneous or manifestly wrong. Therefore, we conclude that the trial court's finding that the wife was entitled to have her attorney's fees paid by her husband was not plainly erroneous or manifestly wrong.
Nor was it demonstrated by the husband on appeal that the $4,500 fee which was awarded in this case was excessive. Indeed, two lawyers testified at trial that the reasonable value of the services rendered on behalf of the wife by her attorney was between $5,000 and $6,000. Consequently, we are unable to say that the trial court's award of a $4,500 attorney's fee to the wife's lawyer was clearly excessive or unjust. Phillips v. Phillips, 277 Ala. 2, 166 So.2d 726 (1964).
As an additional issue for consideration on this appeal, the husband urges this court to hold Title 30, chapter 2, section 51, Code of Alabama 1975 (formerly Title 34, section 31) unconstitutional.
The husband's basis for this argument is the fact that Title 30, chapter 2, section 51 permits a wife to receive alimony in a divorce case but does not make similar provisions for a husband (regardless of his financial, mental or physical condition at the time of the divorce). The husband raised the issue of the constitutionality of the statute for the first time in his motion for new trial. And this court will not consider an issue as to the constitutionality of a statute where such issue is raised for the first time in a motion for new trial. Dale v. Dale, 54 Ala. App. 505, 310 So.2d 225 (1975). Nonetheless, in both Orr v. Orr, Ala.Civ.App., 351 So.2d 904,cert. den. Ala., 351 So.2d 906 (1977), and Blackwell v.Blackwell, Ala.Civ.App., 348 So.2d 500 (1977), we refused to declare the Alabama alimony statute unconstitutional.
The final issue raised on appeal concerns whether General Motors was a proper party to the divorce proceedings. General Motors became a party to this action at the motion of the wife. Her motion seeking to make General Motors a party to the divorce proceeding was based on the fact that the husband's automobile dealership agreement with General Motors prohibited the transfer of ownership of any stock of Ray Hughes Chevrolet, Inc. without the knowledge and consent of General Motors. Since the wife's petition for divorce requested that the trial court award her a share in her husband's dealership, she moved to have General Motors made a party to her suit. And we do not believe that the court committed reversible error by ordering that General Motors be joined under the Alabama Rules of Civil Procedure. See Rule 19, ARCP (permitting the joinder of persons needed for a just adjudication).
Nevertheless, the husband did not complain of the court's action in this matter in his pleadings or at any time prior to this appeal. His objection to the joinder of General Motors should have been made before the close of the trial; however, no such objection was proferred and thus the husband did not raise this issue in a timely manner. We have often stated that a party may not raise for the first time on appeal new matter which was not presented by that party to the trial court or upon which the trial court had no opportunity to rule. *Page 917 
Rule 4, ARAP, and committee comments thereto. Consequently, the husband's failure to object to the joinder of a party before the close of the proceedings constituted a waiver of his right to object to the trial court's action on the matter.
Moreover, since only General Motors objected to the court's order requiring that General Motors be made a party to the wife's suit, General Motors is the proper party to appeal the court's ruling on its objection. However, General Motors did not appeal and the husband has no standing to exercise this right on behalf of General Motors.
Having considered the husband's arguments, we find no reversible error and thereby affirm the trial court's award of alimony and child support to the wife.
The wife has requested that this court order that her husband pay a reasonable attorney's fee to her lawyer for his efforts in preparing her defense on this appeal. We consider $500 to be a just and reasonable fee for the services performed on the wife's behalf. Accordingly, we hereby award the sum of $500 to the wife as a reasonable attorney's fee.
ATTORNEY'S FEE AWARDED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
 On Rehearing
Prior to appellant-husband's application for rehearing the appellee-wife filed a motion to amend the judgment entered by this court to include the ten percent award of damages as required by Title 12, chapter 22, section 72, Code of Alabama 1975. Apparently this action was taken as the result of a misapprehension on the part of appellee's attorney. Seemingly he thought that the opinion rendered by this court in regard to this matter constituted a final judgment. However, we should point out to the bar of this state that a judgment on an appeal is not entered until we have ruled on an application for rehearing, or the time for filing such an application has expired.
Since the ten percent penalty will be awarded in this case, we believe the contentions asserted by the parties concerning its applicability should be discussed. Attorney for appellee sought an award of the penalty on the ground that this court had affirmed the trial court's judgment for alimony in gross and attorney's fees. The lawyer who represented appellant challenged appellee's motion by contending that the statutory penalty of ten percent was not applicable in divorce cases.Phillips v. Phillips, 221 Ala. 455, 129 So. 3 (1930). Appellant also maintained that it was improper to impose the ten percent penalty on the award of attorney's fees. Dent v. Foy, 210 Ala. 160,97 So. 627 (1923). However, we do not believe either case cited by appellant supports his arguments in regard to this matter.
Phillips v. Phillips involved a substantial change by the supreme court of the amount of alimony and attorney's fees which had been awarded by the trial court. It is well established that an appellee is not entitled to the ten percent penalty when the amount of judgment is reduced by the appellate court. Chapman v. Rivers Construction Co., 284 Ala. 633,227 So.2d 403 (1969).
On the other hand, Dent v. Foy dealt with the denial of the ten percent penalty on the attorney's fees which had been awarded in the case. But the issue litigated in Dent v. Foy was whether plaintiff's counsel was entitled to attorney's fees paid out of a common fund which resulted from the partition and sale of the parties' jointly owned property. Consequently, the supreme court concluded that no penalty should be awarded because the allowance for the attorney's fee was not "a decree rendered for money" under the statutory predecessor to section 72. The court reasoned that the attorney's fees awarded were merely an allowance of a fee payable out of trust funds and as such did not constitute "a decree rendered for money." Moreover, we should also note that due to the nature of that case the cost of appeal was divided equally between the parties. The situation in Dent v. Foy is significantly *Page 918 
different from that before us in this instance. The decision inDent v. Foy rejected the applicability of the ten percent penalty because both parties were entitled to share in the common fund although a question arose as to whether a portion of the fund could be used to pay one party's attorney. Since the parties shared in the cost of the suit as well as the funds which resulted from the partition, it would have been inequitable to penalize one party merely because he sought to determine how a portion of the common proceeds could be spent.
Rule 8 (a) ARAP permits a stay of execution on a judgment pending appeal provided a supersedeas bond is executed by the appealing party. And this rule is applicable to situations where a judgment is for the payment of money or for the performance of some other act or duty as well as situations where the judgment is only for the performance of some act or duty. In the present case appellant filed an application for supersedeas bond and he had a right to do so since separate provisions of the trial court's decree had ordered him to pay money (alimony and attorney's fees) and had required him to perform various acts (the maintenance of insurance, etc.). Indeed, Ryan v. Ryan, 267 Ala. 677, 104 So.2d 700 (1958), recognized that in order for the husband to stay the trial court's award of alimony (i.e. that amount in excess of the pendente lite support provided for the wife while an appeal was being taken), the filing of a supersedeas bond was necessary. Moreover, the opinion in Ryan v. Ryan noted that once the husband undertook to stay the judgment of the trial court by means of a supersedeas bond, he subjected himself to all the consequences relevant to the use of the bond. Among these consequences were: "bond with security, with penalty and conditions adapted to the character of the decree." (Emphasis supplied.)
The rationale used in Ryan v. Ryan is clearly applicable in this case. If an appellant chooses to use a supersedeas bond he must subject himself to its "detriments" as well as its benefits. One such detriment is the possibility that the ten percent penalty will be awarded if he is unsuccessful on appeal after having executed a supersedeas bond. We see no distinction between this type of case and any other type of civil action. Consequently, we hold that the ten percent penalty provided for in section 72 is applicable to appeals from judgments entered in divorce cases. And the penalty may be applied to the amount superseded even though a portion of that amount may include an award of attorney's fees.
APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] The husband also argues that by ordering that the total award of alimony in gross be made within ten years, the trial court deprived him of the potential benefit of claiming a tax deduction for alimony payments.
This argument is premised on § 71 of the Internal Revenue Code which provides that alimony payments are taxable to the husband unless they are payable over a period of more than ten years, or are subject to the contingencies that the husband survive the wife or that the wife not remarry.
The husband estimates that the minimal tax rate on his alimony payments will be thirty percent — that is, $3,000 a year ($250 per month).
[2] There was conflicting testimony as to the effect of the recession on automobile sales in the Enterprise area during the year of 1975. A local automobile dealer testified that in the six years he had done business in Enterprise, 1975 was the second best year in terms of sales that his Oldsmobile-Buick dealership had experienced.