BRADLEY, Judge.
Former wife appeals from divorce decree rendered by the Circuit Court of Dale County and from the denial of her motion for a new trial. Mrs. King’s principal contention on appeal concerns the adequacy of the alimony award, the division of marital property, and the amount determined by the court to be owed by Mr. King as repayment for loans made by Mrs. King during cover-ture. We affirm.
Mrs. King filed a complaint in February 1978 seeking a divorce on the grounds of incompatibility. A hearing was held in June 1978 during which the following facts were revealed. Eleanor June King and Max King were married in June 1972 in Dothan, Alabama. This marriage, the second marriage for each of them, has produced no children. At the time of their marriage Mr. King was employed as an Alabama State Trooper, and had been so employed for fourteen years. He earns approximately $14,000 annually and his current take-home pay is about $400 bi-weekly. He also owns a farm in Pinckard, Alabama.
Mrs. King has been employed in police work since 1968. Since 1975 she has been employed by the Coffee County Sheriff’s Department in Enterprise as a deputy sheriff and office clerk with a monthly take-home pay of about $385. She testified that she enjoyed her work. Due to the death of her first husband Mrs. King received a weekly benefit of $50 per week in workmen’s compensation and insurance proceeds of $32,000. Her marriage to Mr. King terminated these weekly payments.
After the marriage the parties moved to a home owned by Mr. King in Ozark, Alabama. In March 1973 they moved to the farm home of Mr. King’s elderly father in Pinckard, where they resided until the time of their separation in February 1978. Prior to the separation Mrs. King worked and also cooked and kept house for her husband and his father.
Mrs. King testified that the principal cause of the marital breakdown was Mr. King’s violent temper, a characteristic which she stated disturbed her very much and which was not exhibited during their courtship. Three or four times during their marriage she had left her husband for short periods of time because of his temper. She related several examples of Mr. King’s ill temper which had occurred in her presence. However, during most if not all of the instances, Mr. King’s anger was directed not at Mrs. King but rather towards other persons.
*494 Shortly after Christmas 1977 an incident occurred which prompted Mrs. King to leave her husband. Her son by her first marriage, Pat, came to the farm house with some friends. Upon entering the house Pat encountered the elder Mr. King, who told Pat he was not welcome there and never to come back to the house again. When her husband arrived at the house, Mrs. King and Pat asked him to talk with his father, but he refused. Mrs. King stayed on a few weeks after the incident, hoping the impasse between the family members would be broken, but left after it became apparent that no such reconciliation would occur.
Mrs. King testified that immediately pri- or to the marriage she had about $17,000 of the money she had received upon the death of her first husband. She stated that during the course of her marriage Mr. King did not support her by providing her clothing, other necessities and transportation, but rather she provided much of these things for herself. She further stated that she used her money to purchase groceries ($50-$60 a week) for herself, her husband and the elder Mr. King from 1972 until 1975 when her money gave out. In 1974 she purchased a deep freezer using funds withdrawn from her retirement account.
Mrs. King testified that during the marriage she loaned her husband money from her savings. She once withdrew $5,000 for him to use as collateral for a loan to purchase cattle. When the loan was repaid she received $1,600 in cash, and the rest was left in a checking account held jointly by her and her husband and was subsequently spent on household expenses. On another occasion she loaned her husband $2,000-$3,-000 to purchase hogs. She also provided some financial assistance for her son’s attorney’s fees in a child custody matter.
Mr. King testified that in his opinion he had repaid all the money owed to his wife except for $2,500 plus interest, which he acknowledged as now being owed her. He stated that all his paychecks had been deposited in joint checking accounts upon which both he and his wife could write checks; that his wife at all times could have drawn upon those funds had she chosen to do so, and that he had never told her not to use their joint accounts for household expenses. He conceded that he possibly had “too much temper” at times, but that with the type job he had “you have got to have a certain amount of push about you to make things go.”
The testimony indicates that Mr. King had acquired title to all the real estate he now owns prior to his marriage to Mrs. King. The parties stipulated that his principal asset, the 278 acre farm in Pinckard, was worth about $165,000 on April 14, 1975 according to a Federal Land Bank and FHA appraisal, and that the property had appreciated in value since that time. Mr. King bought most of this property from his family and paid a total of $109,500 for this property, but the indebtedness on the land — reflecting loans for equipment purchases and for bad crops — totals $168,000. He estimated the current market value of this property at $750 per acre.
Mr. King’s farming operation (peanuts, corn, soybeans, livestock) has, in the last few years, been operated as a partnership with his brother. Mr. King owns a tractor and accessories purchased for about $30,000 with an indebtedness of $15,000-16,000 on it. He and his brother own a peanut picker purchased for about $6,400. During the marriage he purchased for Mrs. King’s use a 1977 Thunderbird automobile, now worth about $7,000 and upon which about $4,000 is still owed. Mr. King also has a retirement account with the State of Alabama in the approximate amount of $17,250 built up over his twenty years of employment as a state trooper.
Mr. King testified that he started in the cattle business in 1960 and that he currently is engaged in extensive livestock operations, principally involving cows and hogs. At the time of the separation in February 1978, his brood cows, yearlings and herd bulls were worth approximately $45,000. He also owned a large number of hogs, all acquired after his marriage, upon which he owes a feed bill debt of about $3,000. The size of his cattle herd has not increased since before he met Mrs. King.
*495 Prior to the hearing in this cause the court allowed Mr. King to sell approximately $23,000 worth of cows and $7,000 worth of hogs. Mr. King stated that the proceeds from these sales were spent on outstanding farm debts accumulated over the years. The court had also issued an order allowing Mrs. King to remove certain articles of furniture and personal property from the farm house.
Following the hearing the trial court entered a decree dissolving the marriage on the grounds of incompatibility of temperament. The decree awarded to the husband the real estate, farm equipment, livestock, the personal property still remaining in the parties’ dwelling, certain bank accounts and all motor vehicles except the 1977 Thunderbird, which was awarded to the wife. The wife was also awarded a certain bank account and the home in Enterprise which she owned prior to the marriage and upon which $3,000 is owed. The decree states that each party shall assume responsibility for the debts upon the property which they were awarded.
Additionally, Mr. King was ordered to pay Mrs. King, in repayment of the loan she had made to him, the sum of $2,500 plus interest at eight percent per annum from January 1, 1974. This repayment was ordered to be made within ninety days of the decree. Mr. King was also ordered to pay Mrs. King the sum of $14,400 as alimony in gross at the rate of $200 per month beginning July 1, 1978 and continuing for seventy-two months. Mr. King was further ordered to pay court costs and $500 as the wife’s attorney’s fees.
Mrs. King’s four principal contentions on appeal, argued in bulk in the brief filed on her behalf, are that the trial court (1) erred in awarding to the wife an inadequate amount of alimony, (2) erred in making a division of the marital property, (3) erred in determining the amount of money the husband was to pay to the wife as repayment for monies borrowed during the marriage, and (4) rendered a judgment that is contrary to the law and facts in this case.
She cites Watson v. Watson, 45 Ala.App. 306, 229 So.2d 807 (1969) for the proposition that the amount of an award of alimony in gross usually varies from one-half of the husband’s estate to one-third or less, and that the determination of this amount depends on what is fair and reasonable in the light of the relevant facts of the case. She argues that Mr. King had a legal duty to support her during the marriage which he failed in large measure to perform, and that the award of $14,400 as alimony in gross is merely a repayment of the monies which Mrs. King received on the death of her first husband and which she expended for loans and necessities during the marriage.
She further argues that the trial court abused its discretion in that Mr. King has not only been allowed the interest-free use of her money during the marriage, but the $200 per month repayment with no interest has allowed Mr. King to “reap a harvest.”
This court reiterated the well-known rule in Burson v. Burson, Ala.Civ.App., 363 So.2d 778 (1978) that the award of alimony by a trial court is largely within the discretion of the trial judge, and that such an exercise of discretion is reviewed by this court only to determine if the judgment is so unsupported by the legal evidence as to be arbitrary and unjust. We also noted that this same standard of review applies equally well to the trial court’s division of property.
We find no abuse of discretion by the trial court in its decree. Under these facts we are not convinced that either the award of alimony in gross or the division of property was arbitrary or unjust.
It is apparent that the trial court chose to believe the husband’s testimony rather than that of the wife regarding the amount of the debt owed to the wife. The law does not permit this court to substitute its judgment for that of the trial court who. heard the evidence ore tenus. Burson, supra. The trial court’s determination of this issue is well-supported by the testimony. Mrs. King herself testified that when her $5,000 had been released as collateral she received a portion of those funds in cash *496 and voluntarily left the remainder in the parties’ joint checking account.
Mrs. King now claims that the funds contributed by her to the marriage form a part of her separate estate. However, she did not treat those funds as such during the marriage. The undisputed testimony of Mr. King was that Mrs. King had access at all times to the funds in the couple’s joint checking account. Mrs. King herself testified that she occasionally wrote checks on that joint account. Under these facts we are not persuaded that Mrs. King was entitled as a matter of law to a return of these voluntarily contributed funds prior to a determination of the amount of alimony in gross.
Appellant contends that the trial court “erred in failing to take into account the dollar value of a typical housewife such as Mrs. King.” She directs our attention to a newspaper article discussing a study by the American Council of Life Insurance wherein it was concluded that “the average housewife with two (2) children was worth exactly $17,351.88 per year.”
While we would not dispute the value of the performance of household services, we think the factors to be considered by the trial court in determining the amount of the award of alimony in gross are set forth in Hughes v. Hughes, Ala.Civ.App., 362 So.2d 910 (1978), and cases cited therein. Those factors are: the parties’ future prospects; the parties’ standard of living during their marriage and their potential for maintaining or exceeding that standard after their divorce; their ages, sex and health; the length of their marriage; the source (or sources) of their common property; and in appropriate situations, the conduct of the parties with reference to the cause of the divorce. We think the trial court properly considered these factors and that its decree reflects no abuse of discretion.
The wife’s request for attorney’s fees for this appeal is denied.
This case is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J, concur.